Stacey Thomas LEE, Plaintiff–Appellant,

v.

BURLINGTON NORTHERN SANTA FE RAILWAY COMPANY, a Delaware corporation, Defendant–Appellee.

No. 99–35790.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 16, 2001

Filed April 16, 2001

**1104**

Joe Bottomly, Bottomly Law Offices, Kalispell, Montana; James Carey, Erik Thueson, Thueson & Lamb, Helena, Montana, for the plaintiff-appellant.

Randy J. Cox, Ross D. Tillman, Boone Karlberg & Haddon, Missoula, Montana, for the defendant-appellee.

Before: REINHARDT, WARDLAW, and RONALD M. GOULD, Circuit Judges.

RONALD M. GOULD, Circuit Judge:

This case involves an action for damages against a railroad asserting an alleged failure to maintain adequate warning devices at a grade crossing near Columbia Falls, Montana. After appellant Stacey Thomas Lee ("Lee") was injured in a collision with a train, he sued Burlington Northern Santa Fe ("BNSF"), the train's owner and operator. Lee contended that the warning signs posted at the crossing, which had been installed using federal funds, were insufficient to provide a safe crossing as required by Montana law. A jury verdict resulted in judgment for BNSF. Lee appeals on various evidentiary grounds. We have jurisdiction pursuant to 28 U.S.C. § 1291. We conclude that Lee's state tort action is preempted by federal law, and affirm.

## FACTS AND PROCEDURAL BACKGROUND

On the afternoon of March 29, 1996, Lee drove his pickup truck with two friends, Todd Moriarty ("Moriarty") and Joseph Smith ("Smith"). A few inches of fresh snow had fallen, and the roads were icy and slick. Lee drove westbound on Talbot Road, just outside the town of Columbia Falls, Montana. The posted speed limit on Talbot Road was forty-five miles per hour.

Lee approached Talbot Crossing, in the middle of a long straightaway on Talbot Road. Talbot Crossing was marked with reflectorized crossbucks. These signs were installed with federal funds under a Montana State project to install or upgrade crossbucks on railroad crossings, and were placed in accord with the Manual on Uniform Traffic Control Devices ("MUTCD"). The crossing was also marked with advance warning signs about 240 feet before the crossing. The advance warning signs were also placed in accord with the MUTCD.

Talbot Road intersects Veteran's Drive about 400 feet before the crossing. As Lee approached the intersection, he was traveling thirty to thirty-five miles per hour. Lee looked to his right for traffic approaching the stop sign controlling access onto Talbot Road. One of Lee's passengers, Moriarty, glanced up the road to the crossing, saw a train approaching from the left (south), and yelled "Train!"

Lee applied the brakes just past the intersection in an attempt to stop the truck. Moriarty, seated next to the passenger door, decided that Lee was not going to stop in time to avoid hitting the train and jumped out. Smith, seated in the middle, decided not to jump after it appeared that he would not have time before the truck hit the train.

Lee slowed the truck to about five miles per hour before hitting the train. Lee's truck collided with the second or third car of the train, and Lee became trapped under the train's wheels.[1] Smith jumped out of the truck and pulled Lee to safety.

---

1. It is not clear how Lee became trapped under the train. In a handwritten statement

Lee's left leg was severely injured and ultimately required amputation below the knee. Lee's collision, which was a tragic accident, was the first at Talbot Crossing.

Following the accident, Lee filed a diversity action against BNSF in the United States District Court. Lee alleged that BNSF negligently failed to install active warning lights to make the crossing safe as required by Montana law. BNSF moved for summary judgment, arguing in part that federal law preempted Lee's suit. The district court expressly found that "the crossing was guarded by reflectorized crossbucks the installation of which was funded by federal money. The use of federal funds for the project was authorized and approved by the Federal Highway Administration." But the district court denied summary judgment to BNSF, reasoning:

> The facts here comport with the facts presented to the court in *Shots [v. CSX Transportation, Inc.,* 38 F.3d 304 (7th Cir.1994) ]. Federal funds were expended in the State of Montana as a general statewide project to establish crossbucks

at the accident scene, Smith wrote that Lee "started to bail out but before he could jump out, the train hit the truck, therefore, throwing [Lee] out of the truck and underneath the train." But Lee stated that although he did not jump, he may have had his hand on the door handle when the truck collided with the train.

**2.** The Federal Railway–Highway Crossings Program ("Crossings Program") makes federal funds available to the states to improve grade crossings. The Federal Highway Administration ("FHWA") promulgated 23 C.F.R. §§ 646.214(b)(3) and (4) to address the adequacy of warning devices installed under the Crossings Program. Sections 646.214(b)(3) and (4) provide in full:

> (3)(i) "Adequate warning devices", under § 646.214(b)(2) or on any project where Federal-aid funds participate in the installation of the devices are to include automatic gates with flashing light signals when one or more of the following conditions exist:

at 723 crossings. Absent evidence that there was express approval by the Secretary as to the type of device installed at the Talbot Road crossing, Lee's state claim is not preempted.

Following trial, a jury verdict determined that both BNSF and Lee were negligent. The jury apportioned 33.3% of the negligence to BNSF and 66.6% to Lee. Under Montana comparative negligence law, the district court entered judgment for BNSF. The district court denied Lee's timely motion for a new trial, and this appeal followed.

## DISCUSSION

### I

In *Norfolk Southern Railway Co. v. Shanklin,* 529 U.S. 344, 120 S.Ct. 1467, 146 L.Ed.2d 374 (2000), decided following the district court's decision in this case, the Supreme Court granted a writ of certiorari to resolve a conflict among the circuits as to whether the Federal Railroad Safety Act of 1970 ("FRSA"), by virtue of 23 C.F.R. §§ 646.214(b)(3) and (4),[2] "pre-

> (A) Multiple main line railroad tracks.
> (B) Multiple tracks at or in the vicinity of the crossing which may be occupied by a train or locomotive so as to obscure the movement of another train approaching the crossing.
> (C) High Speed train operation combined with limited sight distance at either single or multiple track crossings.
> (D) A combination of high speeds and moderately high volumes of highway and railroad traffic.
> (E) Either a high volume of vehicular traffic, high number of train movements, substantial numbers of schoolbuses or trucks carrying hazardous materials, unusually restricted sight distance, continuing accident occurrences, or any combination of these conditions.
> (F) A diagnostic team recommends them.
> (ii) In individual cases where a diagnostic team justifies that gates are not appropriate, FHWA may find that the above requirements are not applicable.

empts state tort claims concerning a railroad's failure to maintain adequate warning devices at crossings where federal funds have participated in the installation of the devices." *Id.* at 351, 120 S.Ct. 1467. In *Shanklin,* the widow of a man killed in a crossing accident sued the operator of the train involved in the collision for its alleged failure to maintain adequate warning devices at a grade crossing in Tennessee. *Id.* at 347, 120 S.Ct. 1467. At the time of the accident, the crossing was equipped with advance warning signs and reflectorized crossbucks. The Tennessee Department of Transportation had installed the signs with federal funds as part of a project to improve various crossings throughout the state. *Id.* at 350, 120 S.Ct. 1467.

Addressing the preemptive effect of 23 C.F.R. §§ 646.214(b)(3) and (4), the Court reasoned:

> Sections 646.214(b)(3) and (4) therefore establish a standard of adequacy that "determine[s] the devices to be installed" when federal funds participate in the crossing improvement project. If a crossing presents those conditions listed in (b)(3), the State must install automatic gates and flashing lights; if the (b)(3) factors are absent, (b)(4) dictates that the decision as to what devices to install is subject to FHWA approval. In either case, § 646.214(b)(3) or (4) "is applicable" and determines the type of warning device that is "adequate" under federal law. As a result, once FHWA has funded the crossing improvement and the warning devices are actually installed and operating, the regulation "displace[s] state and private decisionmaking authority by establishing a federal-law requirement that certain protective

devices be installed or federal approval obtained."

*Id.* at 354, 120 S.Ct. 1467 (*quoting CSX Transp., Inc. v. Easterwood,* 507 U.S. 658, 670–71, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993)) (alterations in original). The Supreme Court also rejected the argument that the regulations apply only where the warning devices have been selected based on "diagnostic studies and particularized analyses" of the conditions at a particular crossing. *Id.* at 355, 120 S.Ct. 1467 (abrogating *Shots v. CSX Transp., Inc.,* 38 F.3d 304 (7th Cir.1994)). The Court held that "[w]hen the FHWA approves a crossing improvement project and the State installs the warning devices using federal funds, §§ 646.214(b)(3) and (4) establish a federal standard for the adequacy of those devices that displaces state tort law addressing the same subject." *Id.* at 357, 120 S.Ct. 1467.

This case is controlled by *Shanklin.* The reflectorized crossbucks at Talbot Crossing were installed in 1988 with the use of federal funds. The federal funds were used pursuant to a Montana State project to install or upgrade crossbucks on railroad crossings. The FHWA authorized and approved the use of federal funds for this project. From this, we hold that Lee's state tort claim is preempted by federal law. *Shanklin* makes clear that once the FHWA has funded a crossing improvement and warning devices are actually installed and operating, federal regulations displace state and private decisionmaking authority. *Shanklin,* 529 U.S. at 354, 120 S.Ct. 1467.

## II

Lee contends that *Shanklin* is inapplicable because BNSF did not cross-appeal the district court order denying summary

---

(4) For crossings where the requirements of § 646.214(b)(3) are not applicable, the type of warning device to be installed, whether the determination is made by a State regulatory agency, State highway agency, and/or the railroad, is subject to the approval of FHWA.

judgment on preemption grounds. We find this argument unpersuasive.

■ "A prevailing party need not cross-petition to defend a judgment on any ground properly raised below, so long as that party seeks to preserve, and not to change, the judgment." *Northwest Airlines, Inc. v. County of Kent,* 510 U.S. 355, 364, 114 S.Ct. 855, 127 L.Ed.2d 183 (1994) (citations omitted); *see also El Paso Natural Gas Co. v. Neztsosie,* 526 U.S. 473, 479, 119 S.Ct. 1430, 143 L.Ed.2d 635 (1999) ("Absent a cross-appeal, an appellee may urge in support of a decree any matter appearing in the record, . . . but may not attack the decree with a view either to enlarging his own rights thereunder or of lessening the rights of his adversary.") (internal quotation marks and citations omitted).

■ While there is no bright-line test for determining what constitutes an "enlargement of rights," we have required a cross-appeal when a party seeks to increase its monetary recovery or decrease its monetary liability. *See, e.g., Doherty v. Wireless Broad. Sys. of Sacramento, Inc.,* 151 F.3d 1129, 1131 (9th Cir.1998); *see also United States v. Bajakajian,* 84 F.3d 334, 338 (9th Cir.1996); *c.f. Carter v. CMTA–Molders & Allied Health & Welfare Trust,* 736 F.2d 1310, 1313 (9th Cir. 1984). We have also required a cross-appeal if an issue affects a legal right that may have an impact on damage recovery. *See Turpen v. City of Corvallis,* 26 F.3d 978, 979 (9th Cir.1994); *c.f. Bullard v. Sercon Corp.,* 846 F.2d 463, 467–68 (7th Cir.1988).

■ Because the cross-appeal requirement is a rule of practice and not a jurisdictional bar, "an appellate court has broad power to make such dispositions as justice requires." *Bryant v. Technical Research Co.,* 654 F.2d 1337, 1342 (9th Cir. 1981). In determining whether to allow a cross-appeal that has not been properly noticed, we have considered factors such as: (1) "the interrelatedness of the issues on appeal and cross-appeal"; (2) "whether the nature of the district court opinion should have put the appellee on notice of the need to file a cross-appeal"; and (3) "the extent of any prejudice to the appellant caused by the absence of notice."[3] *Mendocino Envtl. Ctr. v. Mendocino County,* 192 F.3d 1283, 1299 (9th Cir.1999).

■ In this case, after a jury determined that Lee was more than fifty percent negligent, the district court entered judgment for BNSF in accordance with Montana comparative negligence law principles.[4] Because BNSF does not seek to enlarge or modify its rights, but simply to defend the judgment entered in its favor, we hold that it was not required to cross-appeal the district court's denial of summary judgment on preemption grounds. *See El Paso Natural Gas Co.,* 526 U.S. at 479, 119 S.Ct. 1430.

■ But alternatively, even assuming that BNSF's advancement of the preemption issue in light of *Shanklin* changes the judgment, we find compelling the fact that the law changed after BNSF's time to cross-appeal lapsed. *See USA Petroleum Co. v. Atlantic Richfield Co.,* 13 F.3d 1276,

---

**3.** While *Mendocino Environmental Center* also included as a factor "whether notice of cross-appeal was merely late or not filed at all," we do not consider that factor to be relevant here because BNSF had no basis for filing a cross-appeal until after the deadline to do so had lapsed. *Mendocino Envtl. Ctr.,* 192 F.3d at 1299.

**4.** The judgment provided: "that Judgment is entered in favor of the Defendant, Burlington Northern Santa Fe Railway Company and against the Plaintiff, Stacey Thomas Lee, in accordance with the Special Verdict Form returned by the jury on the 11th day of May, 1999 at 12:18 p.m. as attached hereto."

1285 (9th Cir.1994) (explaining the general rule that "a waiver will be excused if a new issue arises while appeal is pending because of a change in the law") (internal quotation marks and citation omitted). Further, because the parties fully briefed and argued the preemption issue to both the district court and this court, no prejudice will result from our consideration of this issue.

## CONCLUSION

BNSF's failure to cross-appeal the district court's denial of its motion for summary judgment does not preclude our consideration of the preemption issue. In light of the Supreme Court's decision in *Shanklin*, 529 U.S. at 354, 120 S.Ct. 1467, Lee's state tort claim is preempted by federal law. We therefore affirm the district court's judgment for BNSF.

AFFIRMED.