# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

SYLVIA MAHACH-WATKINS,
Individually & as the Successor in
Interest to the Estate of John
Joseph Wayne Watkins; PATRICIA
ANN WATKINS,
            *Plaintiffs-Appellees,*

         v.

LARRY DEPEE, a California
Highway Patrol Officer; STATE OF
CALIFORNIA,
            *Defendants-Appellants.*

No. 08-15694

D.C. No.
3:05-cv-01143-SI

OPINION

Appeal from the United States District Court
for the Northern District of California
Susan Illston, United States District Judge, Presiding

Argued and Submitted
July 14, 2009—San Francisco, California

Filed February 1, 2010

Before: Dorothy W. Nelson, William A. Fletcher and
Richard A. Paez, Circuit Judges.

Opinion by Judge William A. Fletcher

## COUNSEL

David Warren Hamilton, S. Michelle Inan, OFFICE OF THE CALIFORNIA ATTORNEY GENERAL, Oakland, California, for the appellants.

Tory M. Pankopf, LAW OFFICES OF TORY M. PANKOPF, Reno, Nevada, Mary Helen Beatificato, BEATIFICATO & ASSOCIATES, Rancho Santa Margarita, California, for the appellees.

## OPINION

W. FLETCHER, Circuit Judge:

California Highway Patrol ("CHP") Officer Larry Depee ("Depee") shot and killed John Watkins ("Watkins") while on

duty in Crescent City, California. Watkins's mother, Sylvia Mahach-Watkins ("Mahach-Watkins"), filed suit under 42 U.S.C. § 1983 and various provisions of state law on her own behalf and on behalf of her son's estate. A number of Mahach-Watkins's claims were dismissed before trial. Two § 1983 claims and a state-law wrongful death claim went to trial. The jury returned a favorable verdict on one of the two § 1983 claims and on the wrongful death claim. The jury awarded nominal damages of one dollar on each of these two claims.

Mahach-Watkins thereafter sought almost $700,000 in attorney's fees under 42 U.S.C. § 1988. The district court awarded $136,687.35. The court reduced the amount of attorney's fees because of the limited success achieved in Mahach-Watkins's § 1983 claim. Depee appeals the award of attorney's fees. He contends under *Farrar v. Hobby*, 506 U.S. 103 (1992), that because of her limited success Mahach-Watkins is entitled to no attorney's fees at all.

For the reasons that follow, we affirm.

## I.   Background

CHP Officer Larry Depee shot and killed John Watkins during a struggle on the night of December 9, 2003. Watkins was unemployed and had a long history of schizophrenia, accompanied by drug and alcohol abuse. He survived on Social Security payments and support from his mother.

In its order denying defendants' motion for summary judgment on the § 1983 and wrongful death claims, the district court wrote:

> The parties essentially agree that, Watkins, a forty-year old American Yurok Indian man, was riding his bicycle down U.S. Highway 101 southbound in the northbound lane. Defendant Depee observed

Watkins and saw that he was riding his bicycle without any lights. Depee tried to initiate a traffic stop of Watkins twice that evening but could not do so because Watkins rode away before defendant could position his patrol car for the stop.

Later that evening, Depee saw Watkins a third time, riding southbound on the sidewalk next to the northbound lane of Highway 101. The parties agree that Depee parked his patrol car directly in front of Watkins. Plaintiff claims that Watkins collided with the patrol car and fell from his bicycle onto the ground, while defendants maintain that Watkins stopped, straddled his bicycle and after Depee told Watkins he could not ride the wrong way in the roadway without lights, that Watkins either shoved or threw the bicycle at Depee and started running. The parties agree that at some point after Depee stopped Watkins, Watkins ran away to a wooded area behind a nearby Super 8 Motel, and Depee chased him. According to Depee, he and Watkins struggled, and at some point during the fight, Watkins began yelling that he needed to go home to take his medications, and also told Depee he had a gun. Also according to Depee, Watkins wrested Depee's flashlight away from him and swung at him twice with the flashlight. After the second swing, Depee drew his gun and shot Watkins several times, killing him.

Based upon, *inter alia*, the declaration of forensic pathologist John Cooper, plaintiff maintains that at the time Depee shot Watkins, Watkins was lying on his left side with his right arm raised up in a "warding off" gesture, and that Watkins could not have been swinging the flashlight at the time of his death. Plaintiff also emphasizes the fact that a fingerprint analysis of Depee's flashlight only revealed one of

Watkins' fingerprints on the head area of the flashlight; plaintiff asserts that if Depee's version of events was true, there would be more of Watkins' fingerprints on the flashlight, and that those fingerprints would be on the shaft of the flashlight.

The evidence at trial was largely consistent with this narrative. Depee testified at trial that he fired two shots and that he was probably two or three feet away from Watkins when he fired. When asked why he shot Watkins, Depee replied:

A. Well, in the end [I] shot him because he was trying to hit me with the flashlight and I definitely felt like he was trying to kill me. He said he had a gun. I don't know why else he would tell anybody you have a gun you wanted the kill them or what-have-you. The whole circumstances fighting, running, assaulting my — and then ultimately the flashlight is when I shot.

Q. Why did you believe, maybe it's obvious, but tell the jury why did you believe he was trying to kill you?

A. That flashlight is no doubt, to me that's a deadly weapon when you['re] swinging that flashlight somebody, to me it's painfully obvious he was trying to kill me.

After Watkins's death, Mahach-Watkins filed suit against Depee and several other defendants in state court under 42 U.S.C. § 1983 and various provisions of California law. Defendants removed to federal court. Mahach-Watkins filed an amended complaint in federal court, pleading a number of federal and state-law claims. Mahach-Watkins's § 1983 claims were contained in her Sixth Cause of Action which contained two "counts." Count 1 included an allegation of excessive force in violation of the Fourth Amendment, as well

as allegations of First, Fifth, and Fourteenth Amendment violations, on behalf of Mahach-Watkins and Watkins's estate. Count 2 was an allegation of a conspiracy to violate Watkins's constitutional rights. In addition, in her Seventh Cause of Action Mahach-Watkins brought a claim under 42 U.S.C. § 1985(3) alleging a failure to prevent civil rights violations and a conspiracy to cover up such violations. Mahach-Watkins's state-law claims included wrongful death, assault and battery, intentional infliction of emotional distress, negligence, and negligent hiring, training and retention.

After motions to dismiss, to strike, and for summary judgment, only three claims survived, as to which Depee was the sole defendant. The claims were a § 1983 Fourth Amendment claim by Mahach-Watkins, a § 1983 Fourth Amendment claim by Watkins's estate, and a state-law wrongful death claim by Mahach-Watkins. The district court held a three-week jury trial, divided into liability and damages phases. At the conclusion of the liability phase, the jury returned a verdict against Depee on the estate's § 1983 Fourth Amendment excessive force claim and Mahach-Watkins's state-law wrongful death claim.

In the damages phase, the district court instructed the jury that it could return an award of only one dollar in nominal damages on the § 1983 claim, irrespective of what the evidence showed. The court instructed the jury that it could return an award on the wrongful death claim in whatever amount the evidence supported. At the conclusion of the damages phase, the jury awarded one dollar in nominal damages on each of the two claims.

Mahach-Watkins moved for a new trial on the issue of damages on the wrongful death claim. The district court denied the motion, explaining that in its view the evidence in support of damages was consistent with the jury's verdict. In the court's words, the evidence showed a "complicated picture of the relationship" between Watkins and his mother.

Although Mahach-Watkins testified that she and her son "loved each other and had a close relationship," the evidence showed that Watkins had threatened his mother "on several occasions," that she was "afraid of him and periodically requested police assistance with him," that he "had difficulty forming any meaningful relationships," and that he "had a serious history of poorly-managed psychiatric instability."

Mahach-Watkins moved for attorney's fees and costs under 42 U.S.C. § 1988 based on the jury's favorable verdict on the § 1983 claim. She sought $686,796.74 in attorney's fees and $117,654.68 in costs. The district court tolled the time for taking an appeal in order to consider the motion for fees. The court awarded $136,687.35 in attorney's fees, reducing the requested amount due to Mahach-Watkins's limited success in her § 1983 suit. The court held that Mahach-Watkins was entitled to recover costs under Federal Rule of Civil Procedure 54, but wrote that it was unable to determine the amount without more information. The court denied the motion for costs and authorized Mahach-Watkins to file a renewed motion after the clerk taxed costs.

Depee appealed the award of attorney's fees. Mahach-Watkins did not file a timely cross-appeal.

## II.   Standard of Review

We review an award of attorney's fees for abuse of discretion. *Benton v. Or. Student Assistance Comm'n*, 421 F.3d 901, 904 (9th Cir. 2005). A district court abuses its discretion if it awards fees based on an erroneous view of the law or a clearly erroneous finding of fact. *Id.*

## III.   Discussion

This appeal presents three issues. First, Mahach-Watkins argues that because the district court had not fully resolved her motion for attorney's fees and costs when Depee filed his

notice of appeal, the appeal was premature. Second, Depee argues that because Mahach-Watkins obtained only one dollar in nominal damages on the § 1983 claim, she is not entitled to attorney's fees under *Farrar v. Hobby*, 506 U.S. 103 (1992). Third, Mahach-Watkins argues that the district court abused its discretion in reducing the amount of attorney's fees.

## A.   Timeliness of Appeal

Mahach-Watkins contends that Depee's notice of appeal was filed prematurely and that we therefore have no jurisdiction. We disagree.

**[1]** Mahach-Watkins filed a motion for attorney's fees and costs on November 14, 2007. On November 20, 2007, she requested, pursuant to Federal Rule of Civil Procedure 58(e), that the district court extend the time for filing an appeal until the motion was decided. The district court granted the motion. Rule 58(e) provides:

> Ordinarily, the entry of judgment may not be delayed, nor the time for appeal extended, in order to tax costs or award fees. But if a timely motion for attorney's fees is made under Rule 54(d)(2), the court may act before a notice of appeal has been filed and become effective to order that the motion have the same effect under Federal Rule of Appellate Procedure 4(a)(4) as a timely motion under Rule 59.

Federal Rule of Appellate Procedure 4(a)(4) provides:

> If a party timely files in the district court any of the following motions under the Federal Rules of Civil Procedure, the time to file an appeal runs for all parties from the entry of the order disposing of the last such remaining motion . . . .

The motions referenced in Rule 4(a)(4) include a motion "for attorney's fees under Rule 54 if the district court extends the time to appeal under Rule 58." Fed. R. App. P. 4(a)(4)(A)(iii). Therefore, once the district court granted Mahach-Watkins's Rule 58(e) motion, the time to file the appeal ran from the entry of the order disposing of the motion for attorney's fees.

**[2]** The district court ruled on Mahach-Watkins's motion for attorney's fees on February 25, 2008. At the same time, it denied without prejudice her motion for costs, permitting her to renew the motion after the clerk of the court had taxed costs. The resolution of the costs motion could have no effect on the resolution of the attorney's fees motion. Because the court's February 25 ruling entirely disposed of Mahach-Watkins's motion for attorney's fees, the parties had 30 days from that date to file their notices of appeal. *See* Fed. R. App. P. 4(a)(1)(A). Depee timely filed his notice of appeal on March 25, 2008.

## B.   Entitlement to Attorney's Fees

**[3]** In an action brought pursuant to 42 U.S.C. § 1983, "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs . . . ." 42 U.S.C. § 1988(b). A plaintiff who receives a nominal damage award for a § 1983 claim is a prevailing party under § 1988. *Farrar*, 506 U.S. at 112. However, under *Farrar*, "[i]n a civil rights suit for damages . . . the awarding of nominal damages [ ] highlights the plaintiff 's failure to prove actual, compensable injury." *Id.* at 115. A nominal damages award often "accomplishe[s] little beyond giving petitioners 'the moral satisfaction of knowing that a federal court concluded that [their] rights had been violated' in some unspecified way." *Id.* at 114 (second alteration in original) (quoting *Hewitt v. Helms*, 482 U.S. 755, 762 (1987)). Therefore, "[w]hen a plaintiff recovers only nominal damages because of his failure to prove an essential element of his claim for monetary relief, the only reasonable fee is usually no fee at all." *Id.* at 115 (internal

citation omitted). We follow the general rule, derived from Justice O'Connor's concurrence in *Farrar*, that "[i]f a district court chooses to award fees after a judgment for only nominal damages, it must point to some way in which the litigation succeeded, *in addition* to obtaining a judgment for nominal damage." *Wilcox v. City of Reno*, 42 F.3d 550, 555 (9th Cir. 1994) (emphasis in original).

**[4]** There are three factors a district court should consider in determining whether a plaintiff succeeded in some way beyond the judgment for nominal damages. First, the court should consider "[t]he difference between the amount recovered and the damages sought," which in most nominal damages cases will disfavor an award of fees. *Farrar*, 506 U.S. at 121 (O'Connor, J., concurring). Second, the court should consider "the significance of the legal issue on which the plaintiff claims to have prevailed." *Id.* Third, the court should consider whether the plaintiff "accomplished some public goal." *Id.* We have approved of the consideration of these factors in nominal damages cases. *Cummings v. Connell*, 402 F.3d 936, 947 (9th Cir. 2005); *Benton*, 421 F.3d at 905-06. We have held that "[w]here the district court properly has weighed [these three] factors, the resulting award [of attorney's fees] is not an abuse of its discretion." *Cummings*, 402 F.3d at 947.

In awarding attorney's fees in this case, the district court wrote a careful order emphasizing the second and third factors. The court wrote that a case resulting in a wrongful death "involves significant legal issues, serves a public purpose, and affirms important rights, regardless of the amount of damages recovered." It wrote, further, that "the constitutional rights at stake in a wrongful death case are of a different magnitude than those at issue in non-death cases, and . . . cases such as the instant one present questions of vital importance to the public." Finally, the court found "that, in addition to obtaining nominal damages, plaintiff achieved other 'tangible results' in that the jury's verdict will likely deter defendant Depee from engaging in future unconstitutional conduct."

We consider the three factors below.

### 1.    Amount of Damages Sought and Recovered

The first factor looks to the difference between the amount of damages sought and recovered.

In her first amended complaint, Mahach-Watkins did not specify an amount of damages. Relevant to the § 1983 excessive force claim, she sought only general and punitive damages "in an amount to be determined according to proof at trial." At the end of the damages phase trial, the court instructed the jury on the § 1983 claim that, as a matter of law, it "must award nominal damages of no more than one dollar." The jury returned a verdict of one dollar, the maximum allowed under the instruction. The court also instructed the jury that it could award punitive damages on the § 1983 claim if it found that Depee's conduct was "malicious, oppressive or in reckless disregard" of Watkins's rights. The jury declined to award punitive damages.

Mahach-Watkins had argued for a jury instruction that would have allowed the jury to award compensatory damages to her son's estate on the § 1983 excessive force claim for pain and suffering between the time he was shot and the time he died. In justifying its instruction allowing only nominal damages, the district court wrote, "The Ninth Circuit has not addressed the question of what damages are available under a Section 1983 wrongful death claim." In the absence of a Ninth Circuit holding on the point, the district court concluded that the available damages on the § 1983 excessive force claim were "those set forth in California's survival statute, Cal. Code Civ. Proc. § 377.34, [which] does not allow recovery for the decedent's loss of enjoyment of life, or the decedent's pain and suffering." Mahach-Watkins has not appealed that ruling. We therefore assume without deciding that as a matter of law compensatory damages were not available to the estate on the § 1983 excessive force claim.

In *Romberg v. Nichols*, 48 F.3d 453, 454 (9th Cir. 1995), plaintiffs had sought $2 million dollars in compensatory and punitive damages. However, in closing argument to the jury, plaintiffs requested only "some sum like one dollar." *Id.* We denied attorney's fees. We wrote, "An attorney cannot avoid *Farrar*'s mandate by waiting until the close of trial and then, when he perceives that his clients have little chance of success, asking for only nominal damages to justify an attorney's fee award." *Id.* at 455.

The case now before us is not on all fours with *Romberg*. In *Romberg*, the plaintiffs' problem was that their evidence did not support their damages claim for $2 million dollars. Here, by contrast, Mahach-Watkins did not seek a specified amount of damages. Rather, she sought only an award of compensatory damages "according to proof at trial." Further, and more important, the district court determined that evidence of actual harm was irrelevant to Mahach-Watkins's § 1983 claim, instructing the jury as a matter of law that she was entitled to nominal rather than compensatory damages.

We do not read *Romberg* to hold that in a § 1983 case in which only nominal damages are available as a matter of law a verdict awarding such damages is less than a complete success. *See, e.g.*, *Farrar*, 506 U.S. at 115 ("When a plaintiff recovers only nominal damages *because of his failure to prove an essential element of his claim for monetary relief*, the only reasonable fee is usually no fee at all." (emphasis added) (internal citation omitted)). But the case before us is not one in which it was clear from the outset that only nominal damages would be available as a matter of law. First, Mahach-Watkins brought several § 1983 claims. She obtained a verdict on only the excessive force claim. Second, the district court believed that the law in the Ninth Circuit was unclear as to the availability of compensatory damages to an estate on a § 1983 excessive force claim resulting in death. Mahach-Watkins sought to persuade the district court that compensatory damages were available. She was unsuccessful

in that attempt and has not appealed the district court's adverse ruling.

**[5]** In sum, Mahach-Watkins sought an award of an indeterminate amount of compensatory and punitive damages on her § 1983 claims. She obtained a verdict on her § 1983 excessive force claim and then obtained an award of only nominal damages. As we discuss below, her success in achieving a liability verdict was significant, independent of any damage award. But the first factor looks only to the difference between the damages sought and obtained. In the circumstances of this case, that factor somewhat disfavors an award of attorney's fees.

### 2. Significance of the Legal Issue on Which Mahach-Watkins Prevailed

The second factor looks to "the significance of the legal issue on which the plaintiff claims to have prevailed." *Farrar*, 506 U.S. at 121 (O'Connor, J., concurring).

We have repeatedly noted the relevance of this second factor. *See*, *e.g.*, *Benton*, 421 F.3d at 905; *Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996). Other circuits have also done so. *See*, *e.g.*, *Mercer v. Duke Univ.*, 401 F.3d 199, 206 (4th Cir. 2005) ("This factor is concerned with the general legal importance of the issue on which the plaintiff prevailed."); *Maul v. Constan*, 23 F.3d 143, 145 (7th Cir. 1994) ("[W]e understand the second *Farrar* factor to address the legal import of the constitutional claim on which plaintiff prevailed."); *Cartwright v. Stamper*, 7 F.3d 106, 110 (7th Cir. 1993) ("The second factor considers the significance of the legal issue on which the plaintiffs prevailed. This factor looks not at the relief obtained but to the extent the plaintiffs succeeded on their theory of liability.").

**[6]** The district court emphasized the importance of the legal issue in this case, whether state-sanctioned force result-

ing in death was excessive. The importance of the issue may be assessed by comparing it to other issues that our sister circuits have held to qualify as important under this factor. *See, e.g.*, *Mercer*, 401 F.3d at 206 (right to be free from discrimination in school sponsored contact sports); *Piper v. Oliver*, 69 F.3d 875, 877 (8th Cir. 1995) (right to be free from illegal detention); *Jones v. Lockhart*, 29 F.3d 422, 424 (8th Cir. 1994) (right to be free from cruel and unusual punishment). We have difficulty imagining a more important issue than the legality of state-sanctioned force resulting in death. It is obviously of supreme importance to anyone who might be subject to such force. But it is also of great importance to a law enforcement officer who is placed in a situation where deadly force may be appropriate. We therefore conclude that the second factor supports the award of attorney's fees.

### 3.   Public Goal

The third factor looks to whether the plaintiff accomplished some public goal.

Depee contends that no public goal was accomplished because his employer, the CHP, investigated the shooting and concluded that his use of force was legally justified. Depee relies on our opinion in *Wilcox v. City of Reno*, 42 F.3d 550, 555 (9th Cir. 1994), where we wrote:

> If the [§ 1983] lawsuit achieved other tangible results—such as sparking a change in policy or establishing a finding of fact with potential collateral estoppel effects—such results will, in combination with an enforceable judgment for a nominal sum, support an award of fees.

In support of Depee's opposition to an award of attorney's fees, the Chief of the CHP's Northern Division provided a sworn declaration to the district court. He stated, *inter alia*:

Officer Larry Depee was not disciplined as a result of the shooting on December 9, 2003 or this litigation. The CHP investigation determined that Officer Depee's use of force was legally justified and consistent with CHP's use of force policy. . . .

Whether or not claims of excessive force are filed, the CHP investigates every shooting incident involving an officer to review policies and practices and to determine issues of employee misconduct. The CHP investigated the shooting in this case. It did not alter or change any of its law enforcement policies and practices as a result of the investigation or this lawsuit. In its experience, the vast majority of excessive force complaints are fact-specific claims which, like the instant litigation, do not result in policy or practice changes.

[7] We are unwilling to conclude that no public goal was served by Mahach-Watkins's § 1983 verdict merely because the CHP disagreed with the jury's conclusion that its officer used excessive force in violation of the Fourth Amendment, and because the CHP has refused either to discipline the officer or to change its policies. The CHP has come to its own conclusions about the legality of Depee's use of force. But the CHP's exoneration of Depee does not mean that his action was, in fact, appropriate. Indeed, we are bound to conclude otherwise, given the unappealed jury verdict that Depee used unconstitutionally excessive force in killing Watkins.

[8] It is possible that the CHP will continue, as it has said it will, to follow its current "policies and practices" concerning the use of force despite the jury's conclusion that Officer Depee acted unconstitutionally. However, this does not mean that Mahach-Watkins's § 1983 suit, and the jury's verdict that Depee used excessive force, accomplished no public goal. With respect to Depee, the district court wrote: "The Court . . . finds that, in addition to obtaining nominal damages,

plaintiff achieved other 'tangible results' in that the jury's verdict will likely deter defendant Depee from engaging in future unconstitutional conduct." Further, the verdict had the deterrent effect we described in *Morales*, 96 F.3d at 364-65: "[T]he verdict established a deterrent to . . . others who establish and implement official policies governing arrests of citizens. Thus, it served the public purpose of helping to protect Morales and persons like him from being subjected to similar unlawful treatment in the future." The CHP's stated choice to ignore that deterrent does not minimize the importance of the case to others. We therefore conclude that the third factor favors the award of attorney's fees.

### 4.   Summary

**[9]** The core of Mahach-Watkins's suit has always been her contention that Depee acted improperly in killing her son. The jury agreed with her, holding under § 1983 that Depee used unconstitutionally excessive force. The jury's liability verdict on the § 1983 claim was hardly a hollow victory for a mother suing for the death of her son. The jury did not give Mahach-Watkins everything she asked for, but it gave her enough to entitle her to an award of attorney's fees under § 1988.

### C.   Size of the Award

Mahach-Watkins did not file a timely cross appeal. Despite her failure to cross-appeal, she seeks to argue that the district court abused its discretion in reducing her attorney's fees request. In his appeal, Officer Depee argues only that Mahach-Watkins is entitled to no attorney's fees. He makes no explicit argument, in the alternative, that if she is entitled to fees the district court's award is too high.

**[10]** We generally require a cross-appeal when a party seeks to enlarge her substantive rights. *Doherty v. Wireless Broad. Sys.*, 151 F.3d 1129, 1131 (9th Cir. 1998). Under this rule, "we have required a cross-appeal when a party seeks to

increase its monetary recovery or decrease its monetary liability." *Lee v. Burlington N. Santa Fe Ry. Co.*, 245 F.3d 1102, 1107 (9th Cir. 2001). "Because the cross-appeal requirement is a rule of practice and not a jurisdictional bar," we have " 'broad power to make such dispositions as justice requires.' " *Id.* (quoting *Bryant v. Technical Research Co.*, 654 F.2d 1337, 1342 (9th Cir. 1981)). Because the issues raised by Mahach-Watkins in challenging the district court's reduction of her fee award are interrelated to the issues properly on appeal, we can consider them. *Id.* at 1107.

**[11]** We are willing to consider Mahach-Watkins's argument as to the amount of fees. Because we consider her argument, we construe Officer Depee's appeal broadly to include a challenge to the amount of fees. We therefore consider the district court's fee award from both directions. The court carefully considered the three factors derived from *Farrar* and provided a written order justifying its conclusion that a substantial reduction of the fee request was appropriate in light of Mahach-Watkins's limited success. We hold that the district court acted within its discretion in awarding $136,687.35.

## Conclusion

For the foregoing reasons, we affirm the district court's award of attorney's fees.

**AFFIRMED.**