**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| MARIA J. MORALES,<br>*Plaintiff-Appellant*,<br><br>v.<br><br>SONYA FRY, Officer, Member of<br>the Seattle Police Department;<br>MICHELLE GALLEGOS, Officer,<br>Member of the Seattle Police<br>Department; CITY OF SEATTLE;<br>BRIAN REES, Officer, Member of<br>the Seattle Police Department,<br>*Defendants-Appellees.* | No. 14-35944<br><br>D.C. No.<br>2:12-cv-02235-JCC |

| | |
|---|---|
| MARIA J. MORALES,<br>            *Plaintiff-Appellee*, | No. 14-35991 |
| v. | D.C. No.<br>2:12-cv-02235-JCC |
| SONYA FRY, Officer, Member of<br>the Seattle Police Department,<br>            *Defendant*, | OPINION |
| and | |
| BRIAN REES, Officer, Member of<br>the Seattle Police Department,<br>            *Defendant-Appellant.* | |

Appeal from the United States District Court
for the Western District of Washington
John C. Coughenour, District Judge, Presiding

Argued and Submitted May 10, 2017
Seattle, Washington

Filed October 16, 2017

Before:  M. Margaret McKeown, Carlos T. Bea,
and N. Randy Smith, Circuit Judges.

Opinion by Judge McKeown;
Dissent by Judge Bea

# SUMMARY[*]

## Civil Rights

The panel affirmed in part and vacated in part the district court's judgment entered following a jury trial, in an action alleging that plaintiff was subjected to excessive force by police officers during a May Day protest in Seattle, and remanded.

The jury found for plaintiff on her excessive force claim against Officer Rees, but not on her unlawful arrest and excessive force against Officer Fry, and awarded plaintiff $0 damages. After trial, the parties stipulated to $1 in nominal damages and the district court awarded plaintiff $165,405 in attorney's fees as the prevailing party against Rees. Plaintiff appealed, arguing that two jury instructions impermissibly submitted the legal question of qualified immunity to the jury. On cross-appeal, the officers challenge the denial of qualified immunity to Rees on his Rule 50(b) motion for judgment as a matter of law, and the award of attorney's fees.

The panel held the question of whether a particular constitutional right is "clearly established," as part of the qualified immunity analysis, is a question of law that must ultimately be decided by a judge. The panel stated only a jury can decide disputed factual issues, while only a judge can decide whether the right was clearly established once the factual issues are resolved. The panel concluded that the district court erred in submitting the "clearly established"

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

inquiry to the jury and that the error was not harmless with respect to plaintiff's claims against Officer Fry. The panel vacated the verdict with respect to plaintiff's unlawful arrest and excessive force claims against Officer Fry and remanded for a new trial on these claims.

The panel held that the district court properly denied Officer Rees's motion for judgment as a matter of law on the issue of qualified immunity. The panel stated that because the jury found in favor of plaintiff on her excessive force claim against Officer Rees, the district court was required to construe the trial evidence in the light most favorable to plaintiff in determining whether her rights were clearly established. Based on the evidence presented at trial, the panel concluded that the jury could have reasonably decided that Officer Rees's use of the pepper spray against plaintiff was retaliatory. The panel held that plaintiff had a clearly established right not to have pepper spray used against her for purposes of retaliation or intimidation and that intentionally pepper-spraying plaintiff for no legitimate law enforcement reason would likely constitute an obvious case of excessive force.

The panel held that the district court did not abuse its discretion in awarding plaintiff $165,405 in attorney's fees. The panel held that the district court properly weighed all three factors set forth in Justice O'Conner's concurrence in *Farrar v. Hobby*, 506 U.S. 103 (1992).

Dissenting, Judge Bea stated that the district court did not err in submitting the jury instructions pertaining to qualified immunity to the jury, but even if submission of the instructions were error, plaintiff failed to preserve the issue for appeal.

**COUNSEL**

Darryl Parker (argued), Civil Rights Justice Center PLLC, Seattle, Washington, for Plaintiff-Appellant/Cross-Appellee.

Robert L. Christie (argued), Christie Law Group PLLC, Seattle, Washington; Peter S. Holmes, City Attorney; Christine L. Olson, Assistant City Attorney; Seattle City Attorney's Office, Seattle, Washington; for Defendants-Appellees/Cross-Appellants.

**OPINION**

McKEOWN, Circuit Judge:

The primary issue in this appeal is whether the "clearly established" prong of the qualified immunity analysis should be submitted to a jury. Following the lead of nearly all of our sister circuits, we conclude that it is a question of law that must ultimately be decided by a judge.

**Background**

This case arises from Maria Morales's arrest during the May 1, 2012 "May Day" protests in Seattle. Morales, who was attending one of the rallies, was in downtown Seattle when Seattle Police Department officers began forming a "bike perimeter" on Pike Street to create a zone where a person who was arrested earlier could be safely moved to a transport van.

Officer Brian Rees asked Morales, who is five feet tall, 110 pounds, to move away from the street so that he could place his bicycle on the sidewalk as part of the perimeter.

When Morales did not appear to hear him, he placed his right hand on her left shoulder to gain her attention. Rees testified that Morales pulled her arm away from him abruptly and said, "Get your fucking hand off of me" before stepping back.[1] Rees then lost sight of Morales.

Morales ended up squeezed between the sidewalk wall and the outside of the bike perimeter. She heard conflicting instructions from officers to move either east or west away from the perimeter. Eventually, there was an opening on the west side and Morales began to follow others who were moving west single file between the wall and the bike perimeter.

The way was narrow and Morales testified that she needed to turn Officer Sonya Fry's protruding bicycle handlebar to the side to create room to pass. Fry testified that she simultaneously perceived what felt like a punch to her chest. Seeing Morales closest to her, Fry believed that Morales had punched her and yanked Morales headlong over the bike, causing Morales to fall on her back on top of other bikes within the bike perimeter zone. Multiple officers then converged upon Morales while she was on the ground.

At some point during this altercation, with several officers holding Morales, Morales briefly lurched off the ground onto her feet. At this point, Rees, who had not been involved in subduing Morales, reached over and discharged his pepper spray in Morales's eyes for approximately one quarter of a second. The surrounding officers, including Rees, then physically subdued Morales.

---

[1] In a video of the incident, Morales is heard saying repeatedly, "Don't touch me," but not using profanity.

Morales was arrested and charged with assault for the blow that Officer Fry perceived. Fry's initial police report stated that Morales yelled "Okay, bitch!" before punching her in the chest with a closed fist. When video of the incident surfaced online, the charges against Morales were dismissed. At trial, Fry conceded that she never heard Morales say "Okay, bitch!", that no one can be heard uttering those words on the video, and that she never saw Morales punch her in the chest.

Morales brought suit against the City of Seattle and several of the officers involved, making unlawful arrest and excessive force claims against Officer Fry and an excessive force claim against Officer Rees (collectively, the "Officers"). At summary judgment, the district court ruled that disputed factual issues, including whether Morales had said "Okay, bitch!" and whether she had punched Officer Fry, precluded granting Fry qualified immunity on the unlawful arrest and excessive force claims. The district court also ruled that disputed factual issues, including whether Officer Rees's use of pepper spray was accidental or intentional, precluded granting Rees qualified immunity on the excessive force claim.

The case then proceeded to a five-day jury trial. At the close of Morales's case-in-chief, the district court denied the Officers' motion for judgment as a matter of law under Fed. R. Civ. P. 50(a). The district court gave the jury instructions on the unlawful arrest and excessive force claims. Morales objected to Jury Instruction Nos. 20 and 21, arguing that they impermissibly submitted the legal question of qualified immunity to the jury.

The jury found for Morales on her excessive force claim against Rees, but not on her unlawful arrest and excessive

force claims against Fry.  The jury awarded $0 in damages to Morales.

After trial, the parties stipulated to $1 in nominal damages as required under *Floyd v. Laws*, 929 F.2d 1390, 1402–03 (9th Cir. 1991) (mandating an award of nominal damages where a jury finds a constitutional violation).  The district court then denied Rees's renewed motion for judgment as a matter of law under Fed. R. Civ. P. 50(b), and awarded Morales $165,405 in attorney's fees as the prevailing party against Rees.

The Officers cross-appeal the district court's denial of qualified immunity to Rees on his Rule 50(b) motion, as well as the district court's award of attorney's fees to Morales as the prevailing party against Rees.

## Analysis

### I. Challenge to Jury Instructions on Qualified Immunity

#### A.  Role of Judge or Jury as Decider

Qualified immunity shields government officials from civil liability unless a plaintiff establishes that: (1) the official violated a constitutional right; and (2) that right was "clearly established" at the time of the challenged conduct, such that "every reasonable official" would have understood that what he is doing violates that right. *Ashcroft v. al-Kidd*, 563 U.S. 731, 735, 741 (2011) (citation and internal quotation mark omitted).  The chief issue in this appeal is whether the second prong of the qualified immunity analysis, whether the constitutional right was "clearly

established," should have been submitted to the jury.[2] We hold that the "clearly established" inquiry is a question of law that only a judge can decide.

Morales's appeal of the jury's verdict in favor of Fry centers on Jury Instruction Nos. 20[3] and 21[4]. The parties and

---

[2] Morales preserved this issue for appeal. Her counsel objected that the issue of qualified immunity necessarily involves a question of law and so no jury instruction could be proper on that point. Having objected to having the jury decide the legal issue in the first place, Morales did not need to propose an instruction. The heart of her objection was abundantly clear from the colloquy with the court.

[3] In its entirety, Jury Instruction No. 20 stated:

This instruction relates to Plaintiff's federal law claim for unlawful arrest against Defendant Sonya Fry.

Defendant Fry contends that her arrest of Plaintiff was justified by her reasonable belief that this action was permitted or required and, therefore, lawful. If Defendant Fry reasonably believed that probable cause existed to arrest Plaintiff, and acted on the basis of that belief, then her reasonable belief would constitute a complete defense to the Plaintiff's claim even if, in fact, the arrest was not lawful. Put another way, even if you find that Defendant Fry violated Plaintiff's constitutional rights by unlawfully arresting her, Defendant Fry cannot be liable if she reasonably believed at the time she acted that her actions were in accordance with the law. But keep in mind that this reasonableness inquiry is an objective one. The question is whether every reasonable officer under those same circumstances would believe that there was no reasonable basis for the arrest.

[4] Jury Instruction No. 21 stated in almost identical terms:

the district court agree that those instructions capture the "clearly established" question. That understanding is reflected in their text. Both instructions stated that "even if you find that [the Defendants] violated Plaintiff's constitutional rights . . . [the Defendants] cannot be liable if [they] reasonably believed at the time [they] acted that [their] actions were in accordance with the law. But keep in mind that this reasonableness inquiry is an objective one. The question is whether every reasonable officer under those same circumstances would believe that" the action was unlawful. Rather than focusing on whether Morales's constitutional rights were violated, these instructions look to whether the officers would have known their conduct violated Morales's rights, an inquiry that requires the court to determine whether the law was "clearly established." *See*

This instruction relates to Plaintiff's federal law claim for excessive force against Defendants Sonya Fry and Brian Rees.

Defendants Fry and Rees contend that their use of force on Plaintiff was justified by their reasonable beliefs that their actions were permitted or required and, therefore, lawful. If the officers reasonably believed that the force used was lawful, and acted on the basis of that belief, then their reasonable beliefs would constitute a complete defense to the Plaintiff's claim even if, in fact, the force was not lawful. Put another way, even if you find that Defendants Fry or Rees violated Plaintiff's constitutional rights by using excessive force, Defendants cannot be liable if they reasonably believed at the time they acted that their actions were in accordance with the law. But keep in mind that this reasonableness inquiry is an objective one. The question is whether every reasonable officer under those same circumstances would believe that the use of force was unlawful.

*Ashcroft*, 563 U.S. at 741; *Pearson v. Callahan*, 555 U.S. 223, 244 (2009).

It was error for the district court to submit this inquiry to the jury. To understand why, it is useful to start with the foundations of the doctrine of qualified immunity. The doctrine protects public officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson*, 555 U.S. at 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Accordingly, the two prongs of qualified immunity balance two important, competing interests: the need to hold public officials accountable for irresponsible actions, and the need to shield them from liability when they make reasonable mistakes. *Id.*

By design, the issue of qualified immunity is usually resolved "long before trial." *See Hunter v. Bryant*, 502 U.S. 224, 228 (1991) (per curiam). The Supreme Court has repeatedly stressed the importance of deciding qualified immunity "at the earliest possible stage in litigation" in order to preserve the doctrine's status as a true "*immunity from suit* rather than a mere defense to liability." *See id.* at 227 (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). Early determination is often possible "because qualified immunity most often turns on legal determinations, not disputed facts." *Sloman v. Tadlock*, 21 F.3d 1462, 1468 (9th Cir. 1994). In addition, courts are now empowered to address the two prongs in whichever order would expedite resolution of the case. *See Pearson*, 555 U.S. at 236–39 (noting that it is frequently "quick[er] and easi[e]r" to determine whether a constitutional right was clearly established than whether it was violated), *overruling Saucier v. Katz*, 533 U.S. 194 (2001).

In particular, the question of whether a particular constitutional right is "clearly established" is one that the Supreme Court has increasingly emphasized is within the province of the judge.  To be sure, this inquiry has always involved examining established precedent at a certain level of granularity.

The Court first adopted the "clearly established" standard in 1982 in *Harlow v. Fitzgerald* out of concern that whether officials met the previous "good faith" standard, which included a subjective element, was too frequently being considered a question of fact for juries to decide.  *See* 457 U.S. at 815–17 & n.27.  The Court hoped that an objective inquiry into whether an official's conduct "violate[d] clearly established statutory or constitutional rights of which a reasonable person would have known" would by contrast "permit the resolution of many insubstantial claims on summary judgment."  *See id.* at 818.

In recent years, the Court has tightened the inquiry to focus closely on an analysis of existing precedent.  In 2011, the Court clarified that while it "do[es] not require a case directly on point . . . existing precedent must have placed the statutory or constitutional question *beyond debate*," such that "every" reasonable official—not just "a" reasonable official—would have understood that he was violating a clearly established right.  *Ashcroft*, 563 U.S. at 741 (emphasis added).  In later cases, the Court reiterated that clearly established law should not be defined "at a high level of generality" and that the "dispositive question" is "whether the violative nature of *particular* conduct is clearly established."  *See, e.g.*, *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (per curiam) (quoting *Ashcroft*, 563 U.S. at 742).  And this year in *White v. Pauly*, the Court stated that barring an "obvious case" under *Graham v. Connor*, 490 U.S. 386

(1989), or *Tennessee v. Garner*, 471 U.S. 1 (1985), the "clearly established" analysis in the excessive force context requires the court to "*identify a case* where an officer acting under similar circumstances . . . was held to have violated the Fourth Amendment." 137 S. Ct. 548, 552 (2017) (per curiam) (emphasis added).

The upshot is that qualified immunity was conceived as a summary judgment vehicle, and the trend of the Court's qualified immunity jurisprudence has been toward resolving qualified immunity as a legal issue before trial whenever possible. This approach presents a dilemma when, as here, a qualified immunity case goes to trial because disputed factual issues remain. Qualified immunity is then transformed from a doctrine providing immunity from suit to one providing a defense at trial. *See Torres v. City of Los Angeles*, 548 F.3d 1197, 1211 n.9 (9th Cir. 2008). Nonetheless, comparing a given case with existing statutory or constitutional precedent is quintessentially a question of law for the judge, not the jury. A bifurcation of duties is unavoidable: only the jury can decide the disputed factual issues, while only the judge can decide whether the right was clearly established once the factual issues are resolved. *See, e.g.*, *Dimick v. Schiedt*, 293 U.S. 474, 486 (1935) ("The controlling distinction between the power of the court and that of the jury is that the former is the power to determine the law and the latter to determine the facts.").

We recognized this principle in *Tortu v. Las Vegas Metropolitan Police Department*, where we explained that "whether a constitutional right was violated . . . is a question of fact" for the jury, while "whether the right was clearly established . . . is a question of law" for the judge. 556 F.3d 1075, 1085 (9th Cir. 2009). Similarly, in *Act Up!/Portland v. Bagley*, we acknowledged that although facts related to an

officer's knowledge and what conduct actually occurred could be disputed material facts to be determined by the fact finder, "whether the law governing the conduct at issue is clearly established is a question of law for the court." 988 F.2d 868, 873 (9th Cir. 1993).

The Ninth Circuit's Model Civil Jury Instructions support our view. They state that the Ninth Circuit Jury Instructions Committee "has not formulated any instructions concerning qualified immunity because most issues of qualified immunity are resolved before trial, or the ultimate question of qualified immunity is reserved for the judge to be decided after trial based on the jury's resolution of the disputed facts." Ninth Circuit Model Civil Jury Instruction 9.34 (2017) (noting that "qualified immunity is a question of law, not a question of fact."). As the Model Instructions explain, "[w]hen there are disputed factual issues that are necessary to a qualified immunity decision, these issues must first be determined by the jury before the court can rule on qualified immunity. The issue can then be raised in a [Federal Rule of Civil Procedure] Rule 50(a) motion at the close of evidence." *Id.* (citing *Tortu*, 556 F.3d at 1083).

Nearly all our sister circuits agree with the position we adopt here. The First, Second, Third, Fourth, Sixth, Seventh, Eighth, Eleventh, and D.C. Circuits take the view that whether a right is clearly established is a legal issue for the judge to decide, although special interrogatories to the jury can be used to establish disputed material facts. *See, e.g.*, *Curley v. Klem*, 499 F.3d 199, 211 (3d Cir. 2007) (noting that a district court that submits the clearly established inquiry to the jury commits "reversible error"); *Pitt v. Dist. of Columbia*, 491 F.3d 494, 509–10 (D.C. Cir. 2007); *Willingham v. Crooke*, 412 F.3d 553, 560 (4th Cir. 2005); *Littrell v. Franklin*, 388 F.3d 578, 584 (8th Cir. 2004);

*Kerman v. City of New York*, 374 F.3d 93, 109 (2d Cir. 2004); *Acevedo-Garcia v. Monroig*, 351 F.3d 547, 563 (1st Cir. 2003); *Johnson v. Breeden*, 280 F.3d 1308, 1318 (11th Cir. 2002) ("Qualified immunity is a legal issue to be decided by the court, and the jury interrogatories should not even mention the term.  Instead, the jury interrogatories should be restricted to the who-what-when-where-why type of historical fact issues." (citation omitted)); *Pouillon v. City of Owosso*, 206 F.3d 711, 718 (6th Cir. 2000); *Warlick v. Cross*, 969 F.2d 303, 305 (7th Cir. 1992).[5]  By contrast, only the Fifth Circuit has unequivocally endorsed the jury determining whether the right was clearly established if qualified immunity is not decided until trial.  *See McCoy v. Hernandez*, 203 F.3d 371, 376 (5th Cir. 2000).

The Officers argue that the jury instructions were proper because we have previously allowed the issue of qualified immunity to be asserted at trial, citing three cases: *Sloman v. Tadlock*, 21 F.3d 1462, 1468 (9th Cir. 1994), *Ortega v. O'Connor*, 146 F.3d 1149, 1155 (9th Cir. 1998), and *Thorsted v. Kelly*, 858 F.2d 571 (9th Cir. 1988).  None of these cases is persuasive.  *Sloman* explicitly reserved the question "whether judge or jury should be the ultimate decider once disputed foundational facts have been decided by the jury."  21 F.3d at 1468.  In *Ortega*, the question whether a jury should be instructed on qualified immunity was not at issue: instead, "the only actual question on appeal as to the qualified immunity issue [wa]s whether substantive

---

[5] The Tenth Circuit also considers this the "better approach," although it acknowledges certain rare and "exceptional circumstances where historical facts are so intertwined with the law" that the court can permissibly "define the clearly established law for the jury" and then allow the jury to "determine [whether] what the defendant actually did . . . was reasonable in light of the clearly established law."  *See Gonzales v. Duran*, 590 F.3d 855, 860-61 (10th Cir. 2009).

law that the court set forth in the jury instructions was correct
and whether i[t] was clearly established in 1981." 146 F.3d
at 1156. And to the extent that *Ortega* and *Thorsted*
suggested that the "clearly established" prong could be
submitted to the jury, we conclude that those cases are
clearly irreconcilable with intervening Supreme Court
authority. *See Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir.
2003) (en banc) (explaining that cases are clearly
irreconcilable where the higher court "ha[s] undercut the
theory or reasoning underlying the prior circuit precedent").
*Ortega* and *Thorsted* employed a qualified immunity method
of analysis evoking "double reasonableness" that has now
been explicitly repudiated by the Supreme Court. *See
Saucier*, 533 U.S. at 202–03; *Katz v. United States*, 194 F.3d
962, 965 (9th Cir. 1999), *overruled by* 533 U.S. 194; *Ortega*,
146 F.3d at 1155–56; *Thorsted*, 858 F.2d at 575.

For these reasons, the district court erred in submitting
the "clearly established" inquiry to the jury. The district
court did not determine as a matter of law what the
"established law" was nor did it offer the jury the
opportunity to decide separately any factual determinations
related to this prong of qualified immunity.

## B. Harmlessness

In light of the jury instruction error, we consider whether
the error was harmless. *See Dang v. Cross*, 422 F.3d 800,
804, 811 (9th Cir. 2005) (explaining that reversal is not
required when "it is more probable than not that the jury
would have reached the same verdict"). We conclude that

the error was not harmless with respect to Morales's claims against Officer Fry.[6]

Here, the special verdict forms only asked the jury:

> Question 1: Do you find for Plaintiff Maria Morales on her federal-law (§ 1983) claim for unlawful arrest against Defendant Sonya Fry?
>
>   Answer: _ (Yes)  X (No)
>
> Question 2: Do you find for Plaintiff Maria Morales on her federal-law (§ 1983) claim for excessive force against Defendant Sonya Fry?
>
>   Answer: _ (Yes)  X (No)

Because the jury answered "No" to both questions, we cannot determine if they found a constitutional violation. One possibility is that the jury believed Officer Fry's version of events, found no underlying constitutional violation, and so did not need to consider application of the clearly established rule set out in Jury Instruction Nos. 20 and 21. And even if the jury did so, whatever it found under these instructions would be surplusage. In that scenario, the jury would have found against Morales regardless. The district

---

[6] No party challenges the jury instructions with respect to Morales's excessive force claim against Officer Rees. Officer Rees waived any challenge to the jury instructions, since he offered them, and Morales does not challenge the jury instructions since she prevailed on this claim.

court's ability to make a contrary finding would have been extremely constrained.

However, another very realistic scenario is that the jury believed Morales's version of events, found one or more underlying constitutional violations, but also concluded that Fry reasonably believed her actions were in accordance with the law (although it was not defined for the jury). Had there been a jury finding of a constitutional violation, the question of clearly established law then would have been put to the district court on a Rule 50(b) motion. The district court could then have either granted or denied Fry qualified immunity.

We have no way of divining which scenario actually happened. As a result, we cannot conclude that it is more probable than not that Morales would have lost her claims against Fry had the jury been properly instructed. *See Dang*, 422 F.3d at 804, 811.[7] Consequently, we must vacate the verdict with respect to Morales's unlawful arrest and excessive force claims against Officer Fry and remand for a new trial on these claims.

On remand, the district court has discretion to employ either a general verdict form, or submit special interrogatories to the jury regarding the disputed issues of material fact. *See* Fed. R. Civ. P. 49. Either way, once the

---

[7] Nor can we determine as a matter of law that Morales's constitutional rights were not clearly established. Whether Officer Fry had probable cause to arrest Morales, and therefore reasonably believed that it was lawful to pull her over the bicycle, depends on disputed factual issues that the jury never resolved in specific interrogatories, including whether Morales said "Okay, bitch!" and whether she punched Officer Fry.

jury returns its verdict, the ultimate determination of whether Officer Fry violated Morales's clearly established rights is a question reserved for the court.[8]

## II. Rule 50(b) Motion

The district court properly denied Officer Rees's renewed motion for judgment as a matter of law on qualified immunity. Because the jury found in favor of Morales on her excessive force claim against Officer Rees, the district court was required to construe the trial evidence in the light most favorable to Morales in determining whether her rights were clearly established. *See Cal. Highway Patrol*, 712 F.3d at 453.

Based on the evidence presented at trial, the jury could have reasonably decided that Rees's use of the pepper spray against Morales was retaliatory. Rees testified that several minutes before the incident between Officer Fry and Morales, he had a prior encounter with Morales where he placed a hand on her shoulder while informing her that she needed to move in a certain direction, and Morales had responded with "something to the effect of, 'Get your fucking hand off of me.'" Rees testified that he subsequently

---

[8] We note that, as here, the difficulty of inferring how the jury decided disputed factual issues based on a general verdict has often resulted in multiple rounds of litigation. *See, e.g.*, *Curley*, 499 F.3d 199 (3d Cir. 2007) ("*Curley II*"); *Curley v. Klem*, 298 F.3d 271 (3d Cir. 2002) ("*Curley I*"); *see also Stephenson v. Doe*, 332 F.3d 68 (2d Cir. 2003). Accordingly, the better practice may be for the district court to include the factual interrogatories. *See, e.g.*, *Curley*, 499 F.3d at 203–04 (providing examples of specific interrogatories); *Stephenson*, 332 F.3d at 81 (same). Nonetheless, if the district court employs a general verdict, it can still decide the clearly established issue on a Rule 50(b) motion by resolving all factual disputes in favor of the prevailing party. *See, e.g.*, *A.D. v. Cal. Highway Patrol*, 712 F.3d 446, 453 (9th Cir. 2013).

lost track of Morales but recognized her again when she "got back up onto her feet" after being pulled over the bike by Fry. As the district court suggested, the jury could have believed that, having recognized Morales from the earlier encounter, Rees intentionally pepper-sprayed her in retaliation for her earlier rudeness, and then claimed that he discharged his pepper spray accidentally.

If Rees had done so, he would have violated Morales's clearly established right not to have pepper spray used "to intimidate . . . or retaliate against" her. *Young v. Cty. of Los Angeles*, 655 F.3d 1156, 1162 (9th Cir. 2011). In addition, intentionally pepper-spraying Morales for no legitimate law enforcement reason would likely constitute an "obvious case" of excessive force "where *Graham* and *Garner* alone offer a basis for decision." *See Brosseau v. Haugen*, 543 U.S. 194, 199 (2004) (per curiam) (citing *Graham*, 490 U.S. 386; *Garner*, 471 U.S. 1). Accordingly, we affirm the district court's denial of qualified immunity as to Officer Rees.

## III.    Attorney's Fees

The district court did not abuse its discretion in awarding Morales $165,405 in attorney's fees. In a § 1983 action, "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b). A plaintiff who receives a nominal damage award for a § 1983 claim is a prevailing party under § 1988, but "[i]f a district court chooses to award fees after a judgment for only nominal damages, it must point to some way in which the litigation succeeded, *in addition* to obtaining a judgment for nominal damage." *Mahach-Watkins v. Depee*, 593 F.3d 1054, 1059 (9th Cir. 2010) (citation omitted).

The Ninth Circuit has adopted Justice O'Connor's concurrence in *Farrar v. Hobby*, which set forth three factors a district court should consider in determining whether a plaintiff succeeded in some way beyond the judgment for nominal damages. *See Mahach-Watkins*, 593 F.3d at 1059 (citing *Farrar v. Hobby*, 506 U.S. 103, 121 (1992) (O'Connor, J., concurring)). The three factors are: (1) the difference between the amount recovered and the damages sought, which in most nominal damages cases will disfavor an award of fees; (2) the significance of the legal issue on which the plaintiff claims to have prevailed; and (3) whether the plaintiff accomplished some public goal. *Id.* (citing *Farrar*, 506 U.S. at 121 (O'Connor, J., concurring)). We have held that "where the district court properly has weighed these three factors, the resulting award of attorney's fees is not an abuse of its discretion." *See id.* at 1060 (internal quotation marks and citation omitted).

Here, the district court properly weighed all three factors in its fee order. The district court first noted that Morales only received $1 in nominal damages, as opposed to the approximately $62,500 Morales sought on her excessive force claim against Officer Rees. The district court acknowledged that this factor weighed against Morales, but noted that it was not dispositive, since otherwise attorney's fees would never be awarded in nominal damages cases. *See id.* We note, however, that the difference between the damages sought and those awarded here is less dramatic than in other cases where courts have denied fees. In *Farrar*, the Supreme Court denied fees where the plaintiff asked for $17 million in damages and received $1. 506 U.S. at 121 (O'Connor, J., concurring). And we have denied attorney's fees where plaintiffs had sought $2 million dollars in compensatory and punitive damages, but requested only

"some sum like one dollar" at closing argument. *Romberg v. Nichols*, 48 F.3d 453, 454 (9th Cir. 1995).

The second factor compares the significance of the legal issue on which the plaintiff claims prevailed to other issues that circuit courts have held to qualify as important under this factor. Rees argues that the use of "a split second" of pepper spray is not as legally significant as an officer's use of deadly force. We don't disagree, but the district court found that the use of pepper spray is deemed to be intermediate force that is capable of "inflicting significant pain and causing serious injury." *Young*, 655 F.3d at 1161. While the use of pepper spray is "less severe than deadly force, [it] nonetheless present[s] a significant intrusion upon an individual's liberty interests." *Id.* at 1161–62. In *Mahach*, we favorably contrasted the importance of an officer's use of deadly force to that of other issues such as the right to be free from discrimination in school-sponsored contact sports, the right to be free from illegal detention, and the right to be free from cruel and unusual punishment. *See* 593 F.3d at 1062. Compared to these other issues, the use of pepper spray on protestors constitutes a significant legal issue.

The third factor looks to whether the plaintiff accomplished some public goal. Rees argues that the precedential value of the excessive force finding is limited, since Rees claims that he "had no memory of deploying the spray" in the "chaotic and unclear circumstances" of the protest. But as Rees concedes, the jury must have decided that his use of pepper spray on Morales was intentional. The district court found that Morales had accomplished a public goal, because the jury's excessive force finding put police officers on notice that intentionally "pepper spray[ing] unarmed, already-restrained but mildly-resistant suspects,

even in loud and chaotic protest situations" violated clearly established law, and it was likely that "in light of the heightened civil protests this past year . . . the police will find themselves in strikingly similar situations." This finding is consistent with *Mahach*, where we concluded that the nominal damages award accomplished a public goal of having a deterrent effect on police officers, even if the police department involved in the shooting did not change its formal policies or practices as a result of the lawsuit. 593 F.3d at 1062.[9]

Finally, the district court did not abuse its discretion in the amount of fees awarded. The district court reduced the fees from the $298,762 requested to $165,405. In so doing, the district court reduced Morales's attorneys' hourly fees, determined the reasonable number of hours needed to secure Morales's victory on her excessive force claim, and reduced the amount of hours billed by one-third to one-half to generate the lodestar amount. By contrast, Rees's proposal that Morales should only be awarded $6,494.83 because she

---

[9] Rees points to *Benton v. Oregon Student Assistance Commission* as support for the proposition that Morales should not be awarded attorney's fees because the litigation did not accomplish a public goal. 421 F.3d 901 (9th Cir. 2005). Notably in *Benton*, we found that no public goal was accomplished because the defendant had voluntarily rectified his wrongful conduct before the district court's finding of a constitutional violation and award of nominal damages. *Id.* at 907. Here, there is no evidence that Rees or the Seattle Police Department voluntarily admitted fault at any point in the proceedings, or that the Seattle Police Department has modified its policies on pepper spray.

only prevailed on 1 of the 46 claims in her original complaint is an unreasonable metric.

**AFFIRMED IN PART, VACATED IN PART, and REMANDED IN PART. Each party shall pay its own costs on appeal.**

---

BEA, Circuit Judge, dissenting.

I respectfully dissent because I believe the district court did not err in submitting Jury Instructions Nos. 20 and 21. But even if submission of the instructions were error, Morales failed to preserve the issue for appeal.

First, the district court did not ask the jury to determine a question of law. Counsel for plaintiff did not and does not say what language in the jury instructions directed the jury to decide what was the "clearly established" law at the time of Morales's arrest. Nor did counsel for plaintiff identify any language in the jury instructions which told the jury that it was their duty to determine the "clearly established" law. Therefore, the district court did not err because the jury instructions did not submit any question of law to the jury.

Second, even if the jury instructions were deficient because they did not sufficiently explain to the jury what was the "clearly established" law at the time (or what conduct would be "in accordance with the law"), Morales did not specifically object to the jury instructions on that basis. *See* Dist. Ct. Dkt. No. 121 at 2 ("It's my view that qualified immunity is a legal question, and that the jurors should be submitted factual questions, not questions of mixed fact and law, in the Ninth Circuit. So I would argue that those two instructions, 20 and 21, are not proper."); *see*

*also* Fed. R. Civ. P. 51(c) ("A party who objects to an instruction or the failure to give an instruction must do so on the record, stating distinctly the matter objected to and the grounds for the objection."). Morales objected on the grounds that Jury Instructions Nos. 20 and 21 submitted a "legal question," or, alternatively, a "question[ ] of mixed fact and law" to the jury. She did not identify the legal question (or question of mixed fact and law) which the instructions purportedly submitted to the jury. That "legal question" as to "qualified immunity" was precisely what *was* the "clearly established" law which any reasonable officer would know. Indeed, she did not object to the fact that the jury instructions failed to inform the jury of the "clearly established" law at the time. Nor did she "distinctly" state what *was* the "clearly established" law that the district court should have instructed the jury. Therefore, I would hold that Morales waived any argument that the jury instructions failed to explain to the jury what was the "clearly established" law at the time of her arrest because she failed to object distinctly to the instructions on that ground before the district court.

Although I disagree with the majority's conclusion that the district court erred in submitting the two instructions to the jury, I agree with the conclusion that the error (assuming now that there is one) was not harmless. It is impossible to determine on the basis of the special verdict form whether the jury decided that Officer Fry had not violated Morales's constitutional rights at all, or that Officer Fry had violated Morales's constitutional rights, but that those rights were not clearly established. It is not "more probable than not that the jury would have reached the same verdict had it been properly instructed." *Dang v. Cross*, 422 F.3d 800, 811 (9th Cir. 2005) (quoting *Galdamez v. Potter*, 415 F.3d 1015,

1025 (9th Cir. 2005)). Therefore, I agree that if the instruction were error, then it would not have been harmless.

However, because I continue to believe the district court did not err in submitting Jury Instructions Nos. 20 and 21 to the jury, I respectfully dissent.