NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FEB 17 2022

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| YOLANDA BANKS-REED, individually; et al., | Nos. 19-17444 20-17085 |
| Plaintiffs-Appellees, | D.C. No. 4:18-cv-05755-YGR |
| v. | |
| JOSEPH MATEU III, individually and in his official capacity as a police officer for Bay Area Rapid Transit police department, | MEMORANDUM* |
| Defendant-Appellant, | |
| and | |
| BAY AREA RAPID TRANSIT, a municipal corporation; et al., | |
| Defendants. | |

Appeal from the United States District Court
for the Northern District of California
Yvonne Gonzalez Rogers, District Judge, Presiding

Argued and Submitted January 13, 2022
Pasadena, California

Before: WALLACE and FRIEDLAND, Circuit Judges, and LASNIK,** District

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Judge.

Bay Area Rapid Transit police officer Joseph Mateu III appeals from the district court's denial of his post-trial motion for judgment as a matter of law, arguing that the jury's determinations that Sahleem Tindle was attempting to surrender and that Mateu used excessive force against him were not supported by substantial evidence. Mateu also argues that he is entitled to qualified immunity, that the award of damages on the § 1983 claim was grossly excessive, and that the district court improperly excluded evidence that would have corroborated Mateu's perception of the facts and circumstances at the time of the shooting. We have jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

As summarized by the district court when denying Mateu's post-trial motions, the following facts were established at trial:

> On the afternoon of January 3, 2018, Sgt. Mateu was on duty at the Bay Area Rapid Transit's ("BART") West Oakland Station when two shots rang out. Bystanders ran into the BART station and sought cover. Sgt. Mateu asked what had happened, to which a bystander responded, "they're shooting." Sgt. Mateu ran out of the station and towards the gunfire. As he ran, Sgt. Mateu radioed-in "[c]ode 33, got shots fired at West Oakland, shots fired." He also shouted: "Let me see your hands! Let me see your hands, now! Both of you! Both of you! Let me see your hands!" Seconds later, Sgt. Mateu reached the sidewalk where Mr. Tindle and another man, Rayvell Newton, were on the ground, engaged in a physical struggle over a gun. As he ran to the scene, Sgt. Mateu had no information. He did not know which of

**       The Honorable Robert S. Lasnik, United States District Judge for the Western District of Washington, sitting by designation.

2

the men was responsible for the altercation or the earlier gunshots. He again ordered the men to show their hands. As the struggle continued, one man, Mr. Tindle, raised his empty left hand. At this point, Sgt. Mateu testified he had lost sight of the gun. Whereupon, and within seconds of arriving on the scene, Sgt. Mateu discharged his weapon, shooting Mr. Tindle in the back three times at close, point blank range. Mr. Tindle was taken to a hospital where he was pronounced dead. An autopsy identified his cause of death as multiple gunshot wounds.

Dist. Ct. Dkt. No. 164 at 2. Viewing the evidence in the light most favorable to appellees and drawing all reasonable inferences in their favor, *EEOC v. Go Daddy Software, Inc.*, 581 F.3d 951, 961 (9th Cir. 2009), there is substantial evidence to support the jury's findings that Tindle was trying to surrender in the moments before Mateu opened fire and that Mateu's use of deadly force in that situation was unreasonable. In challenging the jury's determinations, Mateu ignores evidence and reasonable inferences that support the verdict, instead relying almost exclusively on evidence that the jury was not compelled to accept, namely his insistence that (a) he saw nothing that would explain or justify Tindle's failure to raise both hands in surrender and (b) Tindle had transferred the gun to his right hand and was pointing it toward Newton. Through the officer's body camera footage, the jury saw approximately what Mateu saw during the incident: that Tindle and Newton were struggling over a gun, that the struggle involved close contact and appeared to occupy both of Newton's hands and Tindle's right hand, and that Tindle raised his left hand. The jury, which had reason to doubt Mateu's

3

credibility given inconsistent statements he had made about the shooting over the course of the case, chose not to credit his version of what was happening on the far side of Tindle's body. "[I]n entertaining a motion for judgment as a matter of law, the court . . . may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). Based on the totality of the circumstances reflected in the trial record, the jury could reasonably conclude that Tindle was surrendering, that Mateu's failure to recognize that Tindle was surrendering was unreasonable, and that Mateu's use of deadly force was constitutionally excessive.[1] Because the evidence does not compel a conclusion contrary to the jury's verdict, relief under Rule 50(b) is unavailable. *See Go Daddy Software*, 581 F.3d at 961.

---

[1] To the extent Mateu argues that, even if the jury found that Tindle was surrendering, it would not have been objectively unreasonable for Mateu to fail to recognize that fact, we disagree. The jury was instructed that it "must judge the reasonableness of a particular use of force from the perspective of a reasonable officer on the scene and not with the 20/20 vision of hindsight." *See Graham v. Connor*, 490 U.S. 386, 396 (1989) (providing that standard). The best interpretation of the jury's response to the special interrogatory on surrender was that it found a reasonable officer would have perceived Tindle was surrendering. To the extent there is ambiguity about whether the jury was answering a *different* question, the district court correctly noted that the parties submitted the special interrogatories and waived any objection to their wording.

To be sure, the jury's findings that Tindle was surrendering and that Mateu's failure to recognize that fact was objectively unreasonable are not the only conclusions that could be drawn from the evidence. We cannot, however, substitute our judgment for that of the unanimous jury.

Mateu argues that, even if there were sufficient evidence to support the jury's factual determinations, he is entitled to qualified immunity because there was no clearly established law declaring his conduct unconstitutional. Where, as here, the issue of a constitutional violation has gone to trial, the jury's view of the facts—which can properly be inferred from the jury's verdict, the theories presented at trial, and the responses to special interrogatories—governs the analysis. *See A.D. v. Cal. Highway Patrol*, 712 F.3d 446, 457 (9th Cir. 2013); *Morales v. Fry*, 873 F.3d 817, 824 (9th Cir. 2017). When making the legal determination whether the violated constitutional right was clearly established, the review of the case law "must be particularized to the facts of the case" as found by the jury. *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (internal quotation marks omitted); *Morales*, 873 F.3d at 826. While qualified immunity "does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." *White*, 137 S. Ct. at 551 (internal quotation marks omitted). "A right is clearly established if a reasonable officer would know that his conduct was unlawful in the situation he confronted." *Espinosa v. City & County of San Francisco*, 598 F.3d 528, 532 (9th Cir. 2010).

Given the findings of fact at issue here, we hold that a reasonable officer in Mateu's position would have known that shooting a suspect who, though armed,

was trying to surrender violates the Fourth Amendment. The law prohibiting police officers from seizing "an unarmed, nondangerous suspect by shooting him dead" in the absence of "probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others" is clearly established. *Torres v. City of Madera*, 648 F.3d 1119, 1128 (9th Cir. 2011) (quoting *Tennessee v. Garner*, 471 U.S. 1, 11 (1985)). While the facts of *Torres* and *Garner* are not precisely on point because the jury found that Tindle possessed the gun when Mateu fired, existing case law clearly establishes that mere possession of a gun does not justify lethal force. *Curnow ex rel. Curnow v. Ridgecrest Police*, 952 F.2d 321, 325 (9th Cir. 1991) (holding that a law enforcement officer "could not reasonably have believed the use of deadly force was lawful [where the armed suspect] did not point the gun at the officers and apparently was not facing them when they shot him"); *see also George v. Morris*, 736 F.3d 829, 838 (9th Cir. 2013) (holding that "a reasonable fact-finder could conclude that the deputies' use of force was constitutionally excessive" if an armed suspect did not "turn[] and point[] his gun at them, nor . . . took other actions that would have been objectively threatening"). The jury found that Tindle was attempting to surrender, rejected Mateu's argument that he was compelled to shoot because Tindle was threatening Newton, and concluded that a reasonable officer in Mateu's position would have perceived these facts. Based on the jury's findings, a competent officer in Mateu's

position would have understood that the use of lethal force against an armed but surrendering suspect was unconstitutional.

Mateu's third argument on appeal is that the district court abused its discretion by denying his request for a new trial to remedy what he views as a grossly excessive damage award. A new trial may be granted under Federal Rule of Civil Procedure 59 "even though the verdict is supported by substantial evidence, if the verdict is contrary to the clear weight of the evidence, or is based upon evidence which is false, or to prevent, in the sound discretion of the trial court, a miscarriage of justice." *United States v. 4.0 Acres of Land*, 175 F.3d 1133, 1139 (9th Cir. 1999) (internal quotation marks omitted). "The authority to grant a new trial . . . is confided almost entirely to the exercise of discretion on the part of the trial court." *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36 (1980) (per curiam). Mateu has not shown an abuse of that discretion. There is no indication that the $5.375 million award was driven by passion rather than by what the jury could see on the body camera footage, the expert testimony regarding the injuries inflicted and the body's response thereto, appellees' closing argument regarding Tindle's pain and suffering, and Mateu's decision not to address the issue at all. The district court found that the jury listened attentively to the evidence presented, that their judgment as to the fair measure of pain and suffering was unanimous, and that the court could not say "with any certainty that the pain and suffering Mr.

7

Tindle experienced as each bullet entered his body, and in the moments immediately preceding his death, was not worth the amount the jury awarded." Dist. Ct. Dkt. No. 164 at 14. These conclusions are not an abuse of discretion.[2]

Finally, Mateu argues that the district court erred when it excluded from the excessive force phase of trial evidence that Tindle brought the gun to the scene and fired it twice, shooting Newton, in the minutes before Mateu arrived. The district court held that the evidence was not relevant because Mateu was unaware of those facts at the time he used force, s*ee Glenn v. Washington County*, 673 F.3d 864, 873

---

[2] Mateu's comparison of the excessive force damage award to the negligence damage award is unpersuasive. The losses being compensated, the relevant instructions to the jury, and the way in which the damages were calculated in the first and second phases of the trial were so dissimilar as to make a quantitative comparison uninformative. Nor does the fact that juries have awarded substantially less in other police shooting cases suggest an abuse of discretion. The assessment of pain and suffering is subjective, and another jury's award, based on different facts and evidence, does not invalidate this jury's award. This jury considered video evidence of the shooting, showing Tindle's reaction thereto, his continuing attempts to comply with Mateu's orders even after being shot, the cessation of voluntary movement, and the moment of death. The jury had a close and intimate view of Tindle's death, pain, and suffering in this case. That there are excessive force cases in which the damages awarded are both higher and lower than that at issue here does not mean that the jury's unanimous verdict is "clearly unsupported by the evidence . . . or shocking to the conscience." *Brady v. Gebbie*, 859 F.2d 1543, 1557 (9th Cir. 1988) (internal quotation marks omitted).

n.8 (9th Cir. 2011), and that any probative value of the evidence was outweighed by its prejudicial effect.

> We afford broad discretion to a district court's evidentiary rulings. To reverse such a ruling, we must find that the district court abused its discretion and that the error was prejudicial. A reviewing court should find prejudice only if it concludes that, more probably than not, the lower court's error tainted the verdict. A new trial is only warranted when an erroneous evidentiary ruling substantially prejudiced a party.

*Harper v. City of Los Angeles*, 533 F.3d 1010, 1030 (9th Cir. 2008) (citations and internal quotation marks omitted).  It is undisputed that Tindle and Newton were struggling over the gun when Mateu arrived and that Mateu lost sight of the weapon as the struggle continued. Evidence of Tindle's earlier possession and use of the gun would have been of little probative value in helping the jury determine who possessed the gun at the moment Mateu opened fire.  But that evidence would have been highly prejudicial to appellees and could have confused the jury by putting Tindle's comparative fault at issue, even though it was not relevant to the excessive force analysis. The district court did not abuse its discretion when it excluded the evidence.

AFFIRMED.