Filed 9/30/21

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Tehama)

----

| | |
|---|---|
| MICHAEL VERN MURCHISON, | C090060 |
| Plaintiff and Appellant, | (Super. Ct. No. 16CI000101) |
| v. | |
| COUNTY OF TEHAMA et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Tehama County, Richard Scheuler, Judge. Reversed with directions.

Rogers Joseph O'Donnell, John G. Heller and Emily Wieser for Plaintiff and Appellant.

Porter Scott, Stephen E. Horan and David R. Norton for Defendants and Respondents.

Defendants Sergeant Richard Knox and Sheriff's Deputy Jeff Garrett, of the Tehama County Sheriff's Department (Department), confronted plaintiff Michael Vern Murchison on his rural property, while Knox and Garrett were trying to secure a rifle they had spotted.

Plaintiff brought multiple claims against Knox, Garrett, Sheriff Dave Hencratt, and Tehama County, including federal law claims of unlawful search and excessive force, and state law claims of battery by a peace officer, assault, and interference with his constitutional rights by threat, intimidation, or coercion. The trial court granted defendants' summary judgment motion in its entirety.

On appeal, plaintiff contends there are triable issues of fact as to two of his claims under title 42 United States Code section 1983,[1] whether Knox and Garrett committed an unexcused warrantless search that proximately caused his injuries and whether they used excessive force in detaining him. He also claims error in the granting of summary judgment as to his state law claims for violation of his constitutional rights, battery by a peace officer, and assault. As we will explain, we agree with plaintiff, and shall reverse the trial court's judgment in part and remand with directions.

## FACTS AND PROCEEDINGS

The following facts are taken from the evidence set forth in the papers filed in connection with defendants' summary judgment motion, except that evidence to which objections were properly made and sustained. (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1037.) We summarize the evidence in the light most favorable to plaintiff, the party opposing summary judgment, resolving any doubts concerning the evidence in his favor. (*Ibid.*)

---

[1] Further references to section 1983 are to title 42 of the United States Code.

*Plaintiff's Property*

Plaintiff, who was almost 66 years old at the time of this incident, lived at the end of Joint Road in Red Bluff, California.[2] The maintained section of Joint Road, which was a public highway, ended where it passed plaintiff's house. The county posted a sign reading "Road Closed" at that point, and plaintiff strung a rope across the road to prevent people from driving onto the closed portion of Joint Road.

*Formation of the Officers' Operation*

A real estate agent and his client moved plaintiff's rope to drive past the Road Closed sign to look for property. Plaintiff told them the road was closed. The client told the agent he thought plaintiff had a handgun in his pocket. The agent called the Department to discuss the incident and to confirm that he had a legal right to use the road. The agent did not specifically recall telling anyone at the Department what the client had told him about the handgun, but he said he may have done so.

Hencratt shared with Knox his belief that plaintiff was a convicted felon who was prohibited from owning firearms, and he directed Knox to investigate. Knox and Garrett researched plaintiff's criminal record using a database maintained by the California Department of Justice and discovered that plaintiff was a convicted felon, which they believed precluded him from owning, possessing, or controlling firearms. Based on his research, it also appeared to Garrett that Joint Road was a public roadway and not plaintiff's private property.

Knox did not interview the real estate agent or his client; the client later explained that he had "seen something" in plaintiff's hand, "possibly a gun," but that it "could be anything." The client acknowledged he was at least 100 feet away, had bad eyesight, and just assumed that "for somebody to live somewhere in the country, they have to have a

---

[2] Plaintiff asserted that his property is in an unincorporated portion of Tehama County. This dispute is not relevant to our analysis.

3

gun." Knox and Garrett did not obtain a warrant to search plaintiff's property; Knox acknowledged they did not have probable cause to secure a warrant at that time.

*The Operation*

Knox and Garrett drove an unmarked sports utility vehicle (SUV) to Joint Road near plaintiff's property. They dressed in plain clothes in order to conceal their identity as law enforcement officers; they intended to provoke plaintiff into brandishing a firearm.

Garrett walked toward the Road Closed sign. Plaintiff walked out onto his deck from inside his house, and he told Knox and Garrett that the road was closed and they would be trespassing if they proceeded. Garrett returned to the SUV, and plaintiff went back inside his house. Garrett then walked to the rope, stepped over it, and continued onto the closed section of Joint Road. Knox and Garrett observed a chronograph on the north side of plaintiff's property, which they were aware can be used to measure bullet speed.

Plaintiff left his house, walked through his shop located adjacent to his house to the north, grabbed a pencil and a piece of paper, and approached the SUV to record its license plate number. Plaintiff then walked back to his deck, where he called 911 from a landline.

Garrett and Knox decided to leave. They backed the SUV onto a driveway to the west of plaintiff's shop; the driveway was on plaintiff's property but was used for public purposes, including package pickups and deliveries. The SUV was facing west, meaning the driver's side door faced toward plaintiff, who stood on his porch to the south of his shop.

4

*Observing the Firearm and the Takedown*

Garrett then saw a bolt-action rifle on top of a bench on the north side of plaintiff's shop, and Knox saw the rifle after Garrett told him about it. The rifle was unloaded, and its bolt was back, meaning it was not in a position to be fired.[3] There was no one near the rifle at the time Garrett observed it.

Knox and Garrett got out of the SUV, Knox from the driver's side. Garrett testified that they did not try to obtain a warrant at that time because "at this time we were there, and we decided that we were going to attempt to make contact with [plaintiff] in regards to the rifle." In his deposition, Garrett was asked: "And what was the emergency that allowed you to enter [plaintiff's] property without a warrant?" Counsel objected, and Garrett did not answer. Following the objection, Garrett was again asked, "Was there an emergency?" Garrett responded, "I don't believe there was an emergency."[4]

While plaintiff stood talking to the 911 operator on his porch, Knox began "walking very quickly" toward the back of plaintiff's shop, in the direction of the rifle.

---

[3] The trial court sustained defendants' objection to plaintiff's declaration providing measurements between the SUV and the rifle, and from where plaintiff stood to the rifle. Plaintiff contests this ruling on appeal and argues that witnesses are authorized to give testimony estimating distances. But plaintiff asserted in his declaration that he later *measured* the distances, not that he was estimating. Because plaintiff did not provide a proper foundation for how or when he measured the distances, the trial court did not abuse its discretion in sustaining the objection. (See *Serri v. Santa Clara University* (2014) 226 Cal.App.4th 830, 852 ["According to the weight of authority, appellate courts 'review the trial court's evidentiary rulings on summary judgment for abuse of discretion' "].)

[4] The trial court overruled defendants' objection to this testimony, recognizing that "those words are in the deposition." But the court determined that Garrett's statement did not refer to the time of the use of force, nor did it "tend to prove an illegal search, excessive force, nor to negate the claim of exigent circumstances." We discuss this ruling, *post*.

Knox did not identify himself as law enforcement as he moved toward the rifle. Plaintiff believed he was being robbed; he began running toward the rifle along the east side of the shop--the side facing away from the SUV.

When asked where Knox was at the time plaintiff started running toward the rifle, plaintiff testified that "[Knox] was probably halfway around my shop by then,"[5] and was "past his vehicle." Plaintiff later photographed his view of the shop and driveway from his porch, where he had stood while talking to the 911 operator. He was able to see through a large opening in the south wall of his shop to two windows in the shop's northwest corner. He had drawn a circle around the windows, and he testified he could see "Knox get out of his vehicle and start in a fast pace towards the back of my shop right here (indicating)." He then stated: "And through these windows here where I could see him half [sic]."

After seeing plaintiff begin to run, Knox and then Garrett began running, still moving toward the rifle.[6] They observed what they believed to be ammunition near the rifle; they believed plaintiff could obtain and load the rifle, and they feared plaintiff might fire it at them.

According to Karen Clendenen, plaintiff's girlfriend who witnessed the events, Knox exited the SUV, "started to walk, and then he was walking pretty fast almost a run." She recalled that as Knox began to run, "he pulled his jacket back, and I saw a badge, so at that time I felt a little more comfortable knowing that he was law enforcement. And he took out his service revolver, whatever you call their guns, and he

---

[5] The trial court overruled defendants' objection to this statement; defendants do not challenge this ruling.

[6] Plaintiff disputed this fact and asserted that Knox was already halfway to the gun before plaintiff began running. Plaintiff does not dispute that Knox began *running* toward the rifle, as opposed to continuing to walk toward it, only after plaintiff began running toward the rifle from his location on the porch.

6

headed north and then east around the corner. And [plaintiff] came off the back porch. He was standing on the back porch talking to 911 on the speaker phone because our receiver doesn't work. And he ran off the porch around the barbecue and over to the corner."

Knox reached the rifle before plaintiff, but he continued past it, turning the northeast corner of the shop. As plaintiff approached the shop's northeast corner, Knox came around the corner, aimed his service weapon at plaintiff's head from a distance of eight or nine inches, and yelled, "Sheriff's office, get to the fucking ground, asshole." Plaintiff did not hear the words "Sheriff's Office." He explained: "[W]hen I seen that gun in front of my face, I didn't hear nothing. I was waiting to get shot. I was waiting to die right there. And I thought I was going to get killed for somebody trying to steal from me."

Plaintiff started to back up so he could get on the ground. One to two seconds later, Garrett tackled plaintiff to the ground from behind. Plaintiff went to the ground on his front side and blocked his fall with his hands. His arms were pinned beneath his body, and Knox and Garrett were yelling at him to give them his arms. Either Knox or Garrett shoved plaintiff's face into the ground. Both officers were on his back. They grabbed plaintiff's arms, pulled them behind his back, and handcuffed him, leaving him lying face down in the dirt for "a minute, minute and a half if not longer." Plaintiff realized Knox and Garrett were law enforcement while he was on the ground being handcuffed.

*Plaintiff's Release and His Injuries*

Plaintiff complained that his hands were hurting, and the handcuffs were too tight. The officers informed him that he was a felon in possession of a firearm, but plaintiff

7

asserted he had an expungement order he believed allowed him to possess rifles.[7] Garrett moved plaintiff from the ground to sitting on an ice chest next to the shop, loosening his handcuffs after he repeatedly complained. Knox confirmed that plaintiff's conviction had been expunged. The officers removed plaintiff's handcuffs and left.

In his discovery responses, plaintiff asserted he experienced "[n]ew right flank pain, increased left knee pain, increased neck pain, increased lower back pain, and PTSD [posttraumatic stress disorder]" as a result of the incident. In another response, he added that he felt pain in his right lower rib cage area and right hip, and had experienced nightmares, nausea, and anxiety attacks. In response to defendants' separate statement of undisputed material facts, plaintiff agreed that he did not break any bones, and that as a result of the incident, he claimed *physical* injuries of " 'right flank pain' and an exacerbation of prior pain and injuries."

On appeal, plaintiff refers to his discovery responses, included in the record on summary judgment, and asserts that Garrett's takedown injured his lower back, neck, hip, and knee and caused him to suffer from sleeplessness, nightmares, nausea, and anxiety. He asserts he was prescribed medication and received medical treatment for both physical and psychological injuries. Defendants urge us to not consider this evidence; we address that issue in our Discussion, *post*.

*Plaintiff's Complaint*

Plaintiff filed suit. His first amended complaint, which is the operative pleading, asserted causes of action against Knox, Garrett, Hencratt, and Tehama County. Plaintiff claimed that all defendants violated his civil rights under section 1983, claiming as relevant here that (1) the officers conducted an unlawful search when Knox walked toward the shop and rifle; and (2) the officers used excessive force when they arrested

---

[7] In 2003, the superior court dismissed plaintiff's felony conviction pursuant to Penal Code section 1203.4.

him. Plaintiff also alleged state law claims including a claim against all defendants for violation of the Tom Bane Civil Rights Act (Civ. Code, § 52.1) (Bane Act), and claims against Knox and Garrett for battery by a peace officer and assault.[8]

*Defendants' Motion for Summary Judgment*

Defendants moved for summary judgment, or, in the alternative, summary adjudication as to plaintiff's claims, dividing the claims into 20 separate issues. As relevant to plaintiff's claims on appeal, defendants argued the officers' entry onto plaintiff's property was excused by the exigent circumstances or emergency exceptions to the warrant requirement, the officers' use of force was objectively reasonable, and, to the extent the officers committed any constitutional violations, they were entitled to qualified immunity.

Defendants also moved for summary judgment as to plaintiff's state law claims. They argued for summary judgment as to plaintiff's Bane Act claim on the basis the officers did not commit a constitutional violation, and as to plaintiff's assault and battery claims on the basis that the officers' use of force was reasonable under the circumstances.

In support of their motion, defendants submitted a separate statement of undisputed material facts, as well as deposition transcript excerpts, declarations, the county's use of force policy and search and seizure policy, the printout showing plaintiff was convicted of a felony and the Penal Code 1203.4 dismissal order, and plaintiff's responses to defendants' discovery requests.

---

[8] Plaintiff also alleged section 1983 claims on the basis that the officers: (1) conducted unlawful searches when Garrett walked past the rope across Joint Road, and when Knox and Garrett drove onto the driveway in front of his shop; (2) conducted an unlawful seizure by arresting him without probable cause; and (3) inflicted cruel and unusual punishment when arresting him. He also alleged state law claims against Knox and Garrett for false imprisonment and conspiracy. The trial court granted defendants' motion for summary judgment as to these issues and claims, and plaintiff does not challenge those rulings on appeal.

*Plaintiff's Opposition*

Plaintiff filed an opposition to defendants' motion. He asserted the officers had no legal excuse for entering his property, there was a triable issue as to whether the officers' use of force was excessive, and the officers were not entitled to qualified immunity because they violated clearly established law. Plaintiff also asserted his Bane Act claim and other state law claims survived summary judgment based on the unlawful acts of the officers.

Plaintiff responded to defendants' separate statement of undisputed facts and added his own responsive material facts. He included numerous exhibits in support of his opposition, including deposition transcript excerpts, his declaration, incident reports written by Knox and Garrett, and defendants' written discovery responses.

*Defendants' Reply*

Defendants emphasized in reply that an exigent circumstance excused their entry onto plaintiff's property because the officers saw plaintiff run toward the rifle, and the level of force used by the officers was objectively reasonable. Defendants further reiterated that plaintiff's state law claims must be dismissed, and the officers were entitled to qualified immunity.

Defendants filed a response to plaintiff's additional undisputed facts, a reply to plaintiff's response to defendants' separate statement of undisputed material facts, and objections to plaintiff's evidence in support of his opposition.

*Trial Court's Ruling*

The trial court granted defendants' motion in its entirety. The court orally pronounced its ruling and subsequently issued a written order containing only the ruling on each issue. As relevant to the issues on appeal, the court concluded the emergency or exigent circumstances doctrine excused the officers' entry onto the property when they saw the rifle; the court recognized that the officers believed plaintiff was a convicted felon prohibited from owning firearms, they had a legal right and duty to arrest him, and

10

plaintiff had "taken off running to the bench where a high powered rifle was located." The court opined that the officers identified themselves and told plaintiff repeatedly to get down, and when he did not, they used reasonable force to take him to the ground. Based on these rulings, the court granted defendants' motion as to plaintiff's remaining claims. Finally, the court concluded that the officers were entitled to qualified immunity, although its previous rulings had rendered that issue moot.

The trial court entered judgment of dismissal as to all defendants on May 9, 2019. Defendants filed notice of entry of judgment on May 31, 2019. Plaintiff timely appealed. The case was fully briefed in February 2021, and argument was held at the court's request on June 17, 2021.

## DISCUSSION

### I

### *Standard of Review*

On a motion for summary judgment, a defendant must show "that one or more elements of the cause of action . . . cannot be established, or that there is a complete defense to the cause of action." (Code Civ. Proc., § 437c, subd. (p)(2).) Summary judgment is appropriate only "if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (*Id.*, subd. (c).) A triable issue of material fact exists if the evidence and inferences therefrom would allow a reasonable juror to find the underlying fact in favor of the party opposing summary judgment. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.)

"Because this case comes before us after the trial court granted a motion for summary judgment, we take the facts from the record that was before the trial court when it ruled on that motion. [Citation.] ' "We review the trial court's decision de novo, considering all the evidence set forth in the moving and opposing papers except that to which objections were made and sustained.' " [Citation.] We liberally construe the

11

evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party." (*Yanowitz v. L'Oreal USA, Inc.*, *supra*, 36 Cal.4th at p. 1037.)

"In performing an independent review of the granting of summary judgment, we conduct the same procedure employed by the trial court. We examine (1) the pleadings to determine the elements of the claim, (2) the motion to determine if it establishes facts justifying judgment in the moving party's favor, and (3) the opposition—assuming movant has met its initial burden—to 'decide whether the opposing party has demonstrated the existence of a triable, material fact issue. [Citation.]' [Citations.] We need not defer to the trial court and are not bound by the reasons in its summary judgment ruling; we review the ruling of the trial court, not its rationale." (*Oakland Raiders v. National Football League* (2005) 131 Cal.App.4th 621, 630.)

Furthermore, our review is governed by a fundamental principle of appellate procedure, namely, that " '[a] judgment or order of the lower court is presumed correct,' " and thus, " 'error must be affirmatively shown.' " (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) Under this principle, plaintiff bears the burden of establishing error on appeal, even though defendants had the burden of proving their right to summary judgment before the trial court. (*Frank and Freedus v. Allstate Ins. Co.* (1996) 45 Cal.App.4th 461, 474.) For this reason, our review is limited to contentions adequately raised and supported in plaintiff's brief. (*Christoff v. Union Pacific Railroad Co.* (2005) 134 Cal.App.4th 118, 125-126.)

II

*Unlawful Search Claim*

Plaintiff contends his section 1983 claim survives summary judgment because a reasonable jury could find that his injuries were proximately caused by the officers' warrantless entry, which was presumptively unreasonable and was not excused by an exception to the warrant requirement. Defendants respond that the undisputed facts

12

demonstrate that an exigent circumstance or emergency was created when plaintiff began running toward the rifle, giving rise to the officers' objectively reasonable belief that their safety was in danger and excusing their warrantless entry onto plaintiff's curtilage.

As we will explain, we conclude there is a genuine dispute of material fact as to whether the officers violated plaintiff's constitutional rights before any exigent circumstances existed, which would preclude the officers from relying on that exception to the warrant requirement. Accordingly, we agree with plaintiff that a reasonable jury could find that his injuries were proximately caused by the officers' warrantless entry.[9]

A. *Fourth Amendment Background*

Section 1983 requires plaintiff to "plead that (1) the defendants acting under color of state law (2) deprived plaintiffs of rights secured by the Constitution or federal statutes." (*Gibson v. United States* (9th Cir. 1986) 781 F.2d 1334, 1338.) The Fourth Amendment to the federal Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." (U.S. Const., amend. IV.) "It is fundamental that the Fourth Amendment only protects from unreasonable searches 'those areas in which a person has a reasonable expectation of privacy.' [Citation.] Plainly, a private home is a place in which an individual has a reasonable expectation of privacy. [Citation.] Land or structures immediately adjacent to and intimately associated with one's home, referred to as 'curtilage,' are ordinarily considered part of the home itself for Fourth Amendment purposes." (*People v. Williams* (2017) 15 Cal.App.5th 111, 120.) Searches and seizures inside of a home, or within the curtilage, without a warrant are presumptively unreasonable. (*United States v. Martinez* (9th Cir. 2005) 406 F.3d 1160, 1163; *United*

---

[9] We discuss whether the officers are entitled to qualified immunity *post*.

13

*States v. Duenas* (9th Cir. 2012) 691 F.3d 1070, 1080-1081 [curtilage warrants same Fourth Amendment protection as the home].)

Officers have the right to enter the curtilage of a home for purposes of engaging in a consensual encounter with one or more occupants of a home. (*Kentucky v. King* (2011) 563 U.S. 452, 463 (*Kentucky*).) However, "[w]hen a law enforcement officer physically intrudes on the curtilage to gather evidence, a search within the meaning of the Fourth Amendment has occurred. [Citation.] Such conduct thus is presumptively unreasonable absent a warrant." (*Collins v. Virginia* (2018) ___ U.S. ___, 138 S.Ct. 1663, 1670; see also *Florida v. Jardines* (2013) 569 U.S. 1, 8 [although officers have the right to enter the curtilage for purposes of speaking with occupants, entering the curtilage for purposes of "snooping around" constitutes a search within the meaning of the Fourth Amendment].)

"The ability to observe inside curtilage from a lawful vantage point is not the same as the right to enter curtilage without a warrant for the purpose of conducting a search to obtain information not otherwise accessible. [Citation.] [A curtilage] into which an officer can see from the street is no less entitled to protection from trespass and a warrantless search than a fully enclosed garage." (*Collins v. Virginia*, *supra*, 138 S.Ct. at p. 1675.) Thus, while a warrant is not required to observe readily visible items within the curtilage, and officers are not required to shield their eyes when passing by a home on public thoroughfares (*California v. Ciraolo* (1986) 476 U.S. 207, 213-214), a warrant is required to enter the home or the curtilage in the absence of an exception to the warrant requirement (*United States v. Perea-Rey* (9th Cir. 2012) 680 F.3d 1179, 1185, 1186 (*Perea-Rey*) [a driveway and carport is part of the curtilage, and any entry into the curtilage by officers seeking information or evidence is a "search" that is presumptively unreasonable, even where the officers could see into the curtilage]).

B. *Exigency Exception to the Warrant Requirement*

There are several exceptions to the warrant requirement. (*Kentucky*, *supra*, 563 U.S. at pp. 459-460.) One such exception is the existence of exigent circumstances,

14

which justify a warrantless entry, search, or seizure when " 'the exigencies of the situation' make the needs of law enforcement so compelling that [a] warrantless search is objectively reasonable under the Fourth Amendment." (*Mincey v. Arizona* (1978) 437 U.S. 385, 394.) " ' "The need to protect or preserve life or avoid serious injury is" ' one such ' "justification for what would be otherwise illegal absent an exigency or emergency." ' " (*United States v. Snipe* (9th Cir. 2008) 515 F.3d 947, 950-951.)

We apply a two-pronged test to determine whether the exigent circumstances exception applies: "(1) considering the totality of the circumstances, law enforcement had an objectively reasonable basis for concluding that there was an immediate need to protect others or themselves from serious harm; and (2) the search's scope and manner were reasonable to meet the need." (*United States v. Snipe*, *supra*, 515 F.3d at p. 952; *Hopkins v. Bonvicino* (9th Cir. 2009) 573 F.3d 752, 763-764.) Exceptions to the warrant requirement "are 'narrow' and their boundaries are 'rigorously guarded' to prevent any expansion that would unduly interfere with the sanctity of the home." (*Hopkins,* at p. 763.) Accordingly, officers arguing the existence of exigent circumstances " ' "must be able to point to specific and articulable facts from which he concluded that his action was necessary." ' " (*People v. Ovieda* (2019) 7 Cal.5th 1034, 1043; see also *Welsh v. Wisconsin* (1984) 466 U.S. 740, 749-750 [police officers "bear a heavy burden when attempting to demonstrate an urgent need that might justify warrantless searches or arrest"].) Further, officers cannot rely on the exigent circumstances exception to the warrant requirement where they "create the exigency by engaging or threatening to engage in conduct that violates the Fourth Amendment." (*Kentucky*, *supra*, 563 U.S. at p. 462.) For example, in *United States v. Lundin* (9th Cir. 2016) 817 F.3d 1151, at page 1158, officers stood on a house's front porch at 4:00 a.m. and knocked on the front door. They heard crashing noises from the backyard, which they later asserted constituted an exigent circumstance, and they went around the house into the back yard. The federal appellate court observed that the officers *caused* the crashing noises by knocking on the

door, and therefore they were required to show that they lawfully stood on the porch when they created the exigency. The court concluded that, while officers are entitled to encroach upon the curtilage of a home for purposes of engaging in a consensual encounter with the occupants, they exceeded their license to "knock and talk" because they knocked on the door at 4:00 a.m. with the intent to arrest the occupant, not ask questions. (*Id.* at p. 1159.) Because the officers were not authorized to be on the porch at the time they created the exigency, they could not rely on the exigent circumstances exception to justify entering the backyard without a warrant. (*Ibid.*)

Conversely, in *United States v. Ojeda* (9th Cir. 2002) 276 F.3d 486, at pages 488 to 489, the federal appellate court concluded the exigent circumstances exception did indeed apply where officers searched a rear building, where a drug laboratory was located, although they had only obtained a search warrant to search a house near the building. The officers asserted that exigent circumstances existed because the suspects knew the officers were on the property, and their presence would have caused the suspects to destroy evidence. (*Id.* at p. 488.) The court concluded the officers did not create the exigency, which would have precluded application of the exigent circumstances exception, because the officers did not exhibit any intentionally evasive behavior or act in deliberate bad faith; the officers had the right to be on the premises as it was described in the search warrant, and the omission of the building from the search warrant was inadvertent, not intentional. (*Id.* at p. 489; see also *United States v. VonWillie* (9th Cir. 1995) 59 F.3d 922, 926 [rule that government cannot create its own exigency does not apply where the government did not purposefully try to circumvent statutory requirements].)

"[T]he question whether exigent circumstances existed is generally one for the jury. [Citations.] We can affirm the judgment, therefore, only if 'the underlying facts are essentially undisputed, and . . . a finder of fact could reach but one conclusion as to the

16

existence of exigent circumstances.' " (*Lyall v. City of Los Angeles* (9th Cir. 2015) 807 F.3d 1178, 1189.)

C. *Analysis*

Defendants contend that the officers' warrantless entry onto plaintiff's property was excused by the exigent circumstances exception because they entered the property to stop plaintiff from obtaining the rifle and using it against them. They add that there is no evidence the officers were violating plaintiff's Fourth Amendment rights at the time plaintiff began running for the rifle, and therefore they could not have created their own exigency. (See *Kentucky*, *supra*, 563 U.S. at p. 462 [availability of the exigent circumstances exception depends on whether the officers were committing or threatening to commit a Fourth Amendment violation at the time the exigency was created]; *United States v. Lundin*, *supra*, 817 F.3d at p. 1158.)

We disagree and conclude there is a triable issue as to whether the officers were violating plaintiff's Fourth Amendment rights at the time plaintiff began running for the rifle. In his deposition, plaintiff asserted that Knox was past the SUV and was "probably halfway around [his] shop" by the time plaintiff started to run toward the rifle. Specifically, plaintiff said he saw Knox through the windows at the northwest corner of the shop before he ran from the porch toward the rifle, while Clendenen said Knox "headed north and then east around the corner. And [plaintiff] came off the back porch."

A reasonable jury crediting this testimony could find that Knox had violated the Fourth Amendment by leaving the public driveway and entering plaintiff's curtilage, in which plaintiff had a reasonable expectation of privacy, *before* plaintiff began running toward the rifle.[10] (See *Perea-Rey*, *supra*, 680 F.3d at pp. 1185, 1186.) If this were the case, the exigent circumstance exception would not apply to excuse the violation.

---

[10] We recognize that the trial court is required to determine the scope of the curtilage as a question of law. (*United States v. Johnson* (9th Cir. 2001) 256 F.3d 895, 902; see also

17

Moreover, if Knox walked toward the rifle for the purpose of gathering evidence, rather than engaging in a consensual encounter with plaintiff, Knox's entry into plaintiff's curtilage would not be excused by the "knock and talk" exception. (See *Perea-Rey*, *supra*, 680 F.3d at p. 1188 [constitutionality of police incursion into curtilage depends on "whether the officer's actions are consistent with an attempt to initiate consensual contact with the occupants of the home"]; *People v. Lujano* (2014) 229 Cal.App.4th 175, 184 [officers entitled to enter curtilage to engage in consensual encounter to confirm or dispel reasonable suspicion of criminal activity].) Further, if a Fourth Amendment violation occurred, a reasonable jury could find that the incursion, which caused plaintiff to fear robbery and run for his rifle, proximately caused his injuries.

Because we conclude there is a triable issue of fact as to whether Knox was committing a Fourth Amendment violation at the time plaintiff first ran toward the rifle, the trial court erred in granting the motion for summary judgment.

### III

*Excessive Force Claim*

Plaintiff contends that the trial court erred by granting defendants' motion for summary judgment as to his section 1983 claim of excessive force. We agree.[11]

Claims that police officers used excessive force in the course of an arrest, investigatory stop or other "seizure" of a free citizen are analyzed under the reasonableness standard of the Fourth Amendment to the United States Constitution;

---

*United States v. Dunn* (1987) 480 U.S. 294, 301 [factors for determining the scope of the curtilage include "the proximity of the area claimed to be curtilage to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by"].)

[11] We address plaintiff's claim that the officers are not entitled to qualified immunity *post*.

18

police officers may use force to the extent that it is objectively reasonable under the circumstances. (*Graham v. Connor* (1989) 490 U.S. 386, 395, 397 (*Graham*).) Determining whether an officer's actions are objectively reasonable requires balancing " ' "the nature and quality of the intrusion on the individual's Fourth Amendment interests" ' against the countervailing governmental interests at stake." (*Id.* at p. 396; see also *Deorle v. Rutherford* (9th Cir. 2001) 272 F.3d 1272, 1284-1285 ["Less than deadly force, like deadly force, may not be used without sufficient reason; rather, it is subject to the *Graham* balancing test"].) In other words, " '[t]he force which [i]s applied must be balanced against the need for that force.' " (*Deorle*, at p. 1279.) "[I]t is the need for force which is at the heart of the *Graham* factors." (*Liston v. County of Riverside* (1997) 120 F.3d 965, 976.)

" 'The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather with the 20/20 vision of hindsight.' " (*Graham*, *supra*, 490 U.S. at p. 396.) " 'The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving— about the amount of force that is necessary in a particular situation.' " (*Glenn v. Washington County* (9th Cir. 2011) 673 F.3d 864, 871.)

The "inherently fact-specific determination whether the force used to effect an arrest was reasonable under the Fourth Amendment should only be taken from the jury in rare cases." (*Headwaters Forest Def. v. County of Humboldt* (9th Cir. 2000) 240 F.3d 1185, 1205-1206, vacated and remanded on other grounds, 534 U.S. 801 (2001).) "For purposes of summary judgment, even in a qualified immunity case, we must assume the

19

nonmoving party's version of the facts to be correct. " (*Liston v. Riverside*, *supra*, 120 F.3d at p. 977.)

A.  *Government Interests*

In determining the government's interest in the use of force, we pay "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." (*Graham*, *supra*, 490 U.S. at p. 396.)  "The most important *Graham* factor is whether the suspect posed an immediate threat to anyone's safety." (*Nehad v. Browder* (9th Cir. 2019) 929 F.3d 1125, 1132 (*Nehad*).)  Courts may consider other relevant factors in evaluating the totality of the circumstances.  (*Mattos v. Agarano* (9th Cir. 2011) 661 F.3d 433, 441, 451.)

Here, it is undisputed that plaintiff was urgently running toward the rifle because he thought he was being robbed, and there is little doubt he would have obtained it and, at the very least, threatened Knox and Garrett with it.  However, "[s]ometimes . . . officers themselves may 'unnecessarily creat[e] [their] own sense of urgency.'  [Citations.]  . . . Reasonable triers of fact can, taking the totality of the circumstances into account, conclude that an officer's poor judgment or lack of preparedness caused him or her to act unreasonably, 'with undue haste.' " (*Nehad*, *supra*, 929 F.3d at p. 1135.)

Additionally, we may consider an officer's failure to identify himself in determining whether the use of force was reasonable.  (*Nehad*, *supra*, 929 F.3d  at p. 1138.)  Defendants contend that whether the officers identified themselves is only relevant in cases where the officers applied a very high degree of force.  But if an officer's failure to identify themself is relevant to whether the officer's use of force was reasonable, we may consider it.  (See *McKenzie v. Lamb* (9th Cir. 1984) 738 F.2d 1005, 1010-1011 [plaintiffs presented sufficient evidence of excessive force where plain clothes officers burst into hotel room with weapons drawn, forced plaintiffs against the wall,

20

handcuffed them, threw them to the floor, and pressed guns to their heads while refusing to identify themselves].)

We agree that there is a material dispute as to whether the officers' earlier actions created their later need to use force. As we have set forth in detail above, they arrived at plaintiff's rural home in plain clothes and in an unmarked SUV for the express purpose of provoking him into brandishing a weapon that they suspected he possessed illegally. They did not identify themselves as police officers. As plaintiff stood on his porch calling 911 due to the officers' suspicious behavior, Knox began quickly walking onto plaintiff's property toward the rifle. Plaintiff then ran toward the rifle, believing the officers were planning to steal his property and possibly threaten his life. Knox and Garrett, interpreting plaintiff's actions as a threat, ran to cut off his path to the rifle. Knox only shouted "sheriff's office" after causing plaintiff to run toward the rifle, and while aiming a gun at plaintiff's head from inches away. Plaintiff failed to immediately process that the men were law enforcement as he faced down the barrel of a gun. Then, in the one to two seconds that lapsed as plaintiff moved back so he could get on the ground as Knox commanded, he was tackled from behind by Garrett and thereby injured. As he was being arrested, he realized the men were law enforcement officers. It is not clear *as a matter of law* that the officers' earlier actions did *not* create their later need to use force.

Moreover, a reasonable jury could find that the officers' failure to shout "sheriff's office" until the last possible moment caused the exigency. Plaintiff was calling 911 to request law enforcement's help with the ongoing situation when Knox moved toward the rifle. The jury could find that, had the officers first identified themselves, plaintiff would have complied with their instructions and been able to explain his understanding that his prior felony conviction had been dismissed under Penal Code section 1203.4. Indeed, there is evidence that plaintiff was relieved when he learned that the men were officers, stating in his deposition that, while he was on the ground being handcuffed, he "kind of

figured it out that [he] wasn't going to get killed." Similarly, after Clendenen saw Knox's badge as he ran, she "felt a little more comfortable knowing that he was law enforcement."

Further, the jury could also find that the officers, having already seen the rifle, lacked an additional covert investigatory objective that would require them to continue to conceal their identities until they had defendant at gunpoint.

Even if an illegal search did not occur, a reasonable jury could find that the officers' use of force was unreasonable given their actions in trying to provoke an armed response from plaintiff, the role that Knox's act of moving toward the rifle played in creating any exigency, and the officers' failure to identify themselves until they had plaintiff at close range gunpoint, one to two seconds before tackling him from behind.

There is also a triable issue as to whether plaintiff was resisting or seeking to evade arrest. (*Graham*, *supra*, 490 U.S. at p. 396.) Before Knox shouted: "sheriff's office," there is no evidence that plaintiff resisted or sought to evade arrest; he was not aware that Knox and Garrett were law enforcement. Plaintiff testified he did not realize that the men were officers until he was handcuffed on the ground. But even if plaintiff were on notice that the men were law enforcement when Knox first said: "sheriff's office," a reasonable factfinder could find that plaintiff did not resist or seek to evade arrest. He backed up to get on the ground immediately upon being ordered to do so by Knox, and he then was tackled almost immediately. A jury crediting plaintiff's version of events could find that plaintiff attempted to comply with Knox's command and did not attempt to reach for the rifle, reach for Knox's gun, wrestle with Knox, or do anything suggesting resistance. After plaintiff was tackled, defendants contend that the officers struggled with him to get his arms out from under his body and handcuff him. But plaintiff testified that he could not get his hands from underneath his body because the officers were on top of him. A reasonable jury could find that plaintiff was not resisting and that instead he was trying to comply but was unable to move his arms.

22

Finally, the crime of which plaintiff was suspected here--unlawfully possessing a firearm--is not a serious crime as the law defines it.  (See Pen. Code, § 1192.7, subd. (c).)  We recognize, however, that the severity of the crime at issue is of less importance when considering the totality of the circumstances, where the reasonableness of the officers' actions largely depends on the officers' role in creating the urgency they were then required to use force to eliminate.

Defendants argue that this case is analogous to *Godoy v. County of Sonoma* (N.D. Cal., Jul. 22, 2016, 15-cv-00883-WHO) 2016 U.S. Dist. Lexis 96159, an unreported federal district court decision with no precedential value.[12]  There, the excessive force claim was based on two plaintiffs' assertions that a knee was pressed into their backs during handcuffing, one plaintiff's claim that an officer continued to point a gun at him after he was handcuffed, and one plaintiff's claim that an officer pulled her hand in the wrong direction while she was being handcuffed.  (*Id.* at p. *18.)  The district court concluded that an officer's use of a knee to restrain an individual can be part of normal handcuffing procedure, and neither plaintiff alleged lasting injuries resulting from the knee in their backs.  (*Ibid.*)  The plaintiff's testimony regarding a gun being pointed at him was inconclusive at best, thus failing to raise a material dispute.  (*Ibid.*)  The court observed that none of the plaintiffs claimed a gun was thrust or pointed at their face in close proximity.  (*Id.* at p. *21.)  The plaintiff who claimed the officer pulled her arm in the wrong direction was able to pull her arm away and voluntarily place it behind her back.  (*Id.* at p. *20.)  Finally, the court concluded that the officers were not able to

---

[12]  We may cite and rely on unpublished federal district court decisions as persuasive authority (*Mendoza v. City of West Covina* (2012) 206 Cal.App.4th 702, 717, fn. 13; *Futrell v. Payday California, Inc.* (2010) 190 Cal.App.4th 1419, 1433, fn. 6), and "we may consider such decisions when determining whether a constitutional right was clearly established for purposes of our qualified immunity analysis" (*Mendoza*, at p. 717, fn. 13; *Drummond v. City of Anaheim* (9th Cir. 2003) 343 F.3d 1052, 1060).

observe the plaintiffs for a significant period to determine whether they were armed, and therefore it was reasonable for the officers to believe Godoy was armed and could pose an immediate threat to officers or others in a crowd that had gathered at the scene. (*Id.* at p. *21.)

As we have discussed at length, the facts here are distinguishable from those in *Godoy*. Here a reasonable jury could find that the officers' need to use any level of force was due to their own conduct. Additionally, there is evidence that Knox aimed a gun at plaintiff's face from eight or nine inches away. Moreover, not only did the officers have substantial opportunity to observe plaintiff to determine whether he was armed, the sole purpose of their operation was to provoke him to brandish a weapon. Accordingly, we do not agree that the officers' use of force was analogous to *Godoy*.

B. *Nature and Quality of Intrusion*

Evaluating the nature of the intrusion requires an assessment of " 'the type and amount of force inflicted.' " (*Deorle v. Rutherford*, *supra*, 272 F.3d at p. 1279.) The amount of force used may be excessive even where some force is justified. (*Glenn v. Washington County*, *supra*, 673 F.3d at p. 871.) "In evaluating reasonableness, we may consider the presence and severity of a plaintiff's injuries, but injuries are not required." (*Cortesluna v. Leon* (9th Cir. 2020) 979 F.3d 645, 653-654; see also *Floyd v. Laws* (9th Cir. 1991) 929 F.2d 1390, 1402-1403 [court may award nominal damages where a jury finds for plaintiff on excessive force claim but awards no damages].)

At summary judgment, the parties agreed to several undisputed facts related to the amount of force applied by the officers: (1) plaintiff was faced with a gun pointed at his head; (2) one to two seconds later, Garrett hit plaintiff from behind and threw him to the ground; (3) plaintiff went to the ground on his front side and blocked his fall with his hands; (4) when plaintiff was on the ground, either Knox or Garrett shoved his face into the ground, and both Knox and Garrett were on his back; (5) plaintiff complained that his hands hurt because his handcuffs were too tight; (6) "plaintiff did not break any bones as

24

a result of the incident, and his claimed physical injuries consist [*sic*] 'right flank pain' and an exacerbation of prior pain and injuries."

On appeal, plaintiff contends that the record contains evidence of "physical and psychological injuries" he suffered in the encounter. The materials on summary judgment state that plaintiff suffered from PTSD, and he had chronic pain in his neck, knee, and back. He asserted that he suffered from nightmares, nausea, and anxiety attacks, and that he sought treatment for medical and physical issues, anxiety, and depression.

Defendants urge us to not consider plaintiff's evidence beyond the facts agreed to in the undisputed statement of facts. We recognize that, "where evidence is not referenced, is hidden in voluminous papers, and is not called to the attention of the court at all, a summary judgment should not be reversed on grounds the court should have considered such evidence." (*San Diego Watercrafts, Inc. v. Wells Fargo Bank* (2002) 102 Cal.App.4th 308, 316.) But here, the trial court recognized that plaintiff stated he had "pains" as a result of Garrett's tackle, and it concluded there was a lack of evidence of "doctors," or "anything else in there . . . which I would consider a fact which might assist in moving the matter to trial." In other words, the court concluded that a lack of medical bills or other documentation supporting plaintiff's injuries supported summary judgment.

Crediting plaintiff's version of the events and incorporating our earlier references to the evidence, we conclude a reasonable jury *could* find that the officers used unreasonable force here by using any significant force at all. Additionally, even if some force were justified to prevent plaintiff from obtaining the rifle, plaintiff testified he was attempting to get on the ground when he was tackled and driven to the ground after one or two seconds. Although we recognize plaintiff did not sustain severe physical injuries, under the circumstances here we are unable to conclude that plaintiff's excessive force claim fails *as a matter of law*.

IV

*Qualified Immunity*

Defendants contend that the officers are entitled to qualified immunity as to plaintiff's claim of an unlawful search and his claim of excessive force. As we will explain, we disagree.

A. *Legal Background*

Police officers and other governmental officials performing discretionary functions are entitled to qualified immunity, shielding them from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated. (*Anderson v. Creighton* (1987) 483 U.S. 635, 638.) This protection applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact. (*Pearson v. Callahan* (2009) 555 U.S. 223, 231.)

In *Saucier v. Katz* (2001) 533 U.S. 194, at page 201, the high court mandated a two-step sequence for determining whether an officer is entitled to qualified immunity: (1) whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right, and (2) if the plaintiff has satisfied the first step, whether the right at issue was " 'clearly established' " at the time of defendant's alleged misconduct. The high court has since concluded that the *Saucier* sequence may be appropriate and beneficial, but is not mandatory. (*Pearson v. Callahan*, *supra*, 555 U.S. at p. 232.) We find the *Saucier* procedure appropriate and beneficial here. As we have concluded, there is a genuine dispute of material fact as to whether plaintiff has shown a violation of a constitutional right; thus, we proceed to the second step of the *Saucier* sequence.

It is the plaintiff's "burden to show that the contours of the right were clearly established" at the time of the alleged misconduct. (*Clairmont v. Sound Mental Health* (9th Cir. 2011) 632 F.3d 1091, 1109.) In order to conclude that the right that the official allegedly violated is " 'clearly established,' " "[t]he contours of the right must be

26

sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful [citation]; but it is to say that in the light of pre-existing law the unlawfulness must be apparent." (*Anderson v. Creighton*, *supra*, 483 U.S. at 640; see also *White v. Pauly* (2017) __ U.S. ___, 137 S.Ct. 548, 552 [" '[C]learly established law' should not be defined 'at a high level of generality' " and must be particularized to the facts of the case]; *Hope v. Pelzer* (2002) 536 U.S. 730, 741 ["[O]fficials can still be on notice that their conduct violates established law even in novel factual circumstances"]; *Clairmont,* at p. 1109 [there must be some parallel or comparable fact pattern, but the facts of previously decided cases need not match precisely those with which the government official is confronted]; *Rodriguez v. County of Los Angeles* (9th Cir. 2018) 891 F.3d 776, 795 [" '[T]he focus is on whether the officer had fair notice that [the officer's] conduct was unlawful' "].) "Otherwise, police officers would escape liability for even the most egregiously excessive uses of force simply because there was no case on all fours prohibiting that precise type of conduct." (*Mendoza v. City of West Covina*, *supra*, 206 Cal.App.4th at p. 712.) " '[W]hen there are disputed factual issues that are necessary to a qualified immunity decision, these issues must first be determined by the jury before the court can rule on qualified immunity.' " (*Morales v. Fry* (9th Cir. 2017) 873 F.3d 817, 824.)

B. *Unlawful Search Claim*

Defendants contend there was no clearly established law at the time of the incident that would have put the officers on notice that it was a constitutional violation to enter the property to secure the firearm while plaintiff ran toward it. But those are not the undisputed facts before us here. If a jury were to credit plaintiff's version of the facts, where Knox entered the curtilage without a warrant and without exigent circumstances, then the entry was an illegal search, and the law is clear in that regard. (See, e.g., *Perea-Rey*, *supra*, 680 F.3d at pp. 1186-1187 [an officer may not trespass on the curtilage

27

without a warrant, an exception to the warrant requirement, even to merely "knock and talk"].) Accordingly, we cannot say as a matter of law that defendants are entitled to qualified immunity based on the facts before us.

### C. *Excessive Force Claim*

Defendants also argue the officers are entitled to qualified immunity as to plaintiff's excessive force claim because there is no particularized legal authority demonstrating that the officers were not permitted to apprehend plaintiff in the manner that occurred here. We disagree.

The officers were undoubtedly on notice that the *Graham* factors required them to use a reasonable amount of force under the circumstances in arresting plaintiff, and that they generally could not unreasonably create the circumstances then requiring them to use force. Additionally, multiple cases have recognized that an officer's failure to identify himself can lead to the unnecessary and excessive application of force.

In *King v. United States* (6th Cir. 2019) 917 F.3d 409, at page 431, reversed on other grounds in *Brownback v. King* (2021) ___ U.S. ___, 141 S.Ct. 740, the federal appellate court concluded that police officers would not be entitled to qualified immunity if a jury found that the officers failed to properly identify themselves, in which case the plaintiff could not have sought to resist or evade arrest because he would not have known an arrest was being attempted. In that case, the plaintiff asserted he ran away from the officers only after asking them if he was being mugged. The court concluded that, if the jury credited the plaintiff's testimony, any reasonable officer would have known that tackling the plaintiff, holding him down, choking him, and beating him into submission was unreasonable under the circumstances. (*Ibid.*)[13]

---

[13] Defendants contend *King* does not assist plaintiff because it was decided after the events in question. But while the *King* decision would not have put the officers on notice, the court in *King* concluded that clearly established law recognized a reasonable

28

Similarly, in *Atkinson v. City of Mountain View* (8th Cir. 2013) 709 F.3d 1201, at page 1212, the court concluded that an officer had " 'fair warning' that charging at a non-resisting individual without first identifying himself as a police officer was unconstitutional in the context of an arrest." Defendants contend *Atkinson* is inapposite because the plaintiff in that case was "bull rushed" by an officer without provocation and was in the hospital for three weeks. But the issue is not whether the level of provocation or the extent of injuries are analogous to the facts here; rather, the issue is whether the officers were on notice that their actions were unconstitutional. Here, like in *Atkinson*, there is a question of fact as to whether the officers acted unreasonably under the circumstances. In *Atkinson*, the court observed: "A reasonable officer in [the officer's] position—without either of the first two *Graham* factors [whether the crime was severe or violent, or whether the suspect posed an immediate threat to the safety of the officer or others] justifying a forceful arrest—would not have thought it appropriate to charge [the plaintiff] without *first* identifying himself as law enforcement and giving [the plaintiff] a chance" to peacefully comply. (*Atkinson*, at p. 1210.) Similarly, here, a jury crediting plaintiff's version of events could find that the officers failed to reasonably identify themselves and then tackled him before giving him an opportunity to peacefully comply.

In *Vlasak v. Las Vegas* (9th Cir. 2006) 213 Fed.Appx. 512, at page 514, the federal appellate court concluded that whether officers were entitled to qualified immunity depended on whether they identified themselves as police officers. The plaintiff asserted the officers did not identify themselves until after he was wrestled to the floor and placed in handcuffs. If the officers did not identify themselves, "they unnecessarily created a

---

officer would ordinarily inform a suspect of a low-level crime that he was being arrested, especially where there is no reason to not inform him that he is being arrested. (*King*, *supra*, 917 F.3d at p. 431, citing *Atkins v. Township of Flint* (6th Cir. 2004) 94 Fed.Appx. 342, 349.) Accordingly, we cite *King* for the proposition that clearly established law at the time of the events here recognized that a reasonable officer should ordinarily inform a suspect that he is under arrest.

situation in which [the plaintiff] understandably resisted their efforts to subdue him, and in which their use of force was unnecessary and therefore excessive." (*Ibid.*)

We recognize that Knox did, in fact, shout "sheriff's office" when he had plaintiff at gunpoint. But as we have discussed at length *ante*, this was only after encroaching onto plaintiff's property without explanation in a manner that caused plaintiff to call for law enforcement assistance, and then moving to seize plaintiff's gun, all without revealing his identity as a law enforcement officer. This series of deliberate actions left plaintiff with little to no time to appreciate that he was being confronted by members of law enforcement, rather than thieves, in the one to two seconds before he was tackled from behind. Accordingly, we cannot say as a matter of law that the officers were not on notice that their conduct was unconstitutional, and therefore we conclude the officers are not entitled to qualified immunity.[14]

V

*State Law Claims*

Plaintiff contends that his claims for violation of the Bane Act, battery by a peace officer, and assault survive summary judgment. We agree.

A. *Bane Act*

The Bane Act makes it unlawful for any person to interfere by threat, intimidation, or coercion, or attempt to interfere by threats, intimidation, or coercion, with the exercise or enjoyment by any individual secured by the Constitution or laws of California. (See *Austin B. v. Escondido Union School Dist.* (2007) 149 Cal.App.4th 860, 881-883.) " ' "The essence of a Bane Act claim is that the defendant, by the specified improper means (i.e., 'threats, intimidation or coercion'), tried to or did prevent the plaintiff from doing something he or she had the right to do under the law or to force the plaintiff to do

---

[14] Plaintiff argues that we should abrogate the doctrine of qualified immunity. Based on our holding, we need not address that argument.

something that he or she was not required to do under the law." ' " (*Cornell v. City & County of San Francisco* (2017) 17 Cal.App.5th 766, 791-792 (*Cornell*).) An officer cannot claim qualified immunity under the Bane Act. (*Venegas v. County of Los Angeles* (2007) 153 Cal.App.4th 1230, 1240-1247.)

The Bane Act does not require that "the offending 'threat, intimidation or coercion' be 'independent' from the constitutional violation alleged." (*Cornell*, *supra*, 17 Cal.App.5th at p. 800.) Rather, where an unlawful arrest is properly pleaded and proved, "the egregiousness required by [Civ. Code] [s]ection 52.1 is tested by whether the circumstances indicate the arresting officer had a specific intent to violate the arrestee's right to freedom from unreasonable seizure, not by whether the evidence shows something beyond the coercion 'inherent' in the wrongful detention." (*Id.* at pp. 801-802.)

There are two requirements for a finding of specific intent. (*Cornell*, *supra*, 17 Cal.App.5th at p. 803.) First, the court must make the legal determination of whether the " ' "right at issue clearly delineated and plainly applicable under the circumstances of the case." ' " (*Ibid.*) Second, if the first condition is answered in the affirmative, " ' "the jury must make the second, factual, determination. Did the defendant commit the act in question with the particular purpose of depriving the citizen victim of his enjoyment of the interests protected by that . . . right? If both requirements are met, even if the defendant did not in fact recognize the [unlawfulness] of his act, he will be adjudged as a matter of law to have acted [with the requisite specific intent]—i.e., 'in reckless disregard of constitutional [or statutory] prohibitions or guarantees.' " ' " (*Ibid.*)

Applying this standard here, the rights at issue are plaintiff's constitutional rights to be free from unlawful search and excessive force. As we have discussed with respect to qualified immunity in the context of plaintiff's unlawful search and excessive force claims, these rights are clearly defined.

31

Defendants contend there is no evidence that the officers acted with specific intent to deprive plaintiff of the enjoyment of his Fourth Amendment rights. But as the appellate court reiterated in *Cornell, supra*, 17 Cal.App.5th at page 804, "whether the appellant officers understood they were acting unlawfully was not a requirement. Reckless disregard of the 'right at issue' is all that was necessary." As we have discussed and based on the facts before us, a reasonable jury *could* find that the officers recklessly disregarded plaintiff's constitutional rights.

Defendants also contend plaintiff's complaint based his Bane Act claim on the officers' violation of article I, section 13 of the California Constitution; they argue this basis restricts his claim solely to one of unlawful search rather than also including excessive force. We disagree.

First, the use of excessive force constitutes an unreasonable seizure under article I, section 13. (Cal. Const. art. I, § 13 ["The right of the people to be secure in their persons, houses, papers, and effects against unreasonable seizures and searches may not be violated; and a warrant may not issue except on probable cause, supported by oath or affirmation, particularly describing the place to be searched and the persons and things to be seized"]; *Susag v. City of Lake Forest* (2002) 94 Cal.App.4th 1401, 1414 [4th Amend. claim of excessive force requires demonstrating unreasonable seizure].) Second, plaintiff did not bring his Bane Act claim directly under article I, section 13 of the California Constitution. (See *Julian v. Mission Community Hospital* (2017) 11 Cal.App.5th 360, 392 [California Supreme Court has "not decided whether there is a private cause of action for damages under article I, section 13"].) Plaintiff alleged that defendants' conduct "violated Article I, Section 13 of the Constitution of the State of California *and* Cal. Civ. Code § 52.1. [*sic*] in that Defendants Knox and Garrett used the threat of force and or intimidation to violate rights secured by the U.S. Constitution and The California State Constitution." (Italics added.) Thus, he alleged facts constituting a violation of the Bane Act and sought relief under that Act. (See *Venegas v. Los Angeles, supra,* 153

Cal.App.4th at p. 1232 [declining to dismiss plaintiffs' Civ. Code, § 52.1 claims against two defendants for violations of their rights under the 4th Amend. and Cal. Const., art. I, § 13].)

B. *Assault and Battery by a Peace Officer Claims*

As to plaintiff's claims for battery by a peace officer and assault, the standard for proving those state law claims is the same standard applied to section 1983 actions. (See *Edson v. City of Anaheim* (1998) 63 Cal.App.4th 1269, 1274-1275 [both § 1983 actions and state law assault and battery by a peace officer claims require plaintiff to demonstrate the unreasonableness of the force used].) Because we conclude plaintiff's section 1983 claim survives summary judgment, so too must his state law claims for battery by a peace officer and assault.

## DISPOSITION

The judgment is reversed with directions to the trial court to vacate its ruling on summary judgment and enter a new order denying the motion as to the following causes of action as to Knox and Garrett: (1) the first cause of action under section 1983 based on unlawful search and excessive force; (2) the second cause of action for violation of Civil Code section 52.1; (3) the fourth cause of action alleging battery by a peace officer; and (4) the fifth cause of action for assault. Costs of this appeal are awarded to plaintiff. (Cal. Rules of Court, rule 8.278(a).)


　　　　　　　　　　　　　　　　　　　　/s/
　　　　　　　　　　　　　　　　　　　Duarte, J.

We concur:


　　　　/s/
Raye, P. J.

　　　　/s/
Krause, J.